## J. J. LINN, APPELLANT, v. J. D. MINOR, RESPONDENT.

CONGRESS HAS NOT PROHIBITED SPECIFIC CONTRACT LAWS. There is nothing in the laws of Congress prohibiting the enforcement of contracts for the payment of coin in accordance with their strict letter by judgments for the kind of money agreed to be paid.

SPECIFIC CONTRACT LAWS. It is a matter of indifference to the United States Government whether individual debts be paid in one currency or another; nor does the legislation of Congress make it the duty of any person to employ notes in preference to gold; nor is it in contravention of public policy or contrary to good morals to allow a person to waive his privilege of paying his debts in legal tender notes.

THE DOCTRINE OF STARE DECISIS. A decision once made upon due deliberation ought not to be disturbed by the same court, except upon the most cogent reasons and undoubted manifestations of error; but if it be clearly incorrect, and no injurious results will be likely to flow from a reversal, and especially if it be injurious and unjust in its operation, it should be reversed.

MILLIKEN v. SLOAT, 1 Nev. 585, as to specific contract law being in conflict with the legal tender law of Congress, overruled.

MILLIKEN v. SLOAT, beyond its operation in enabling dishonest debtors to defraud their creditors, has been a dead letter ever since its rendition, and virtually overruled by the moral power of the upright portion of the community.

APPEAL from the District Court of the Fifth Judicial District, Humboldt County.

This was an action to recover the sum of three hundred and one dollars in United States gold coin, due and payable by the terms of a promissory note. The Court found as a conclusion of law that the plaintiff was entitled to judgment against the defendant for the sum claimed, and was of opinion that it should be for such sum in United States gold coin; but felt constrained, under the authority of *Milliken* v. *Sloat*, (1 Nev. 585) to deny a judgment in any specific kind of money, and accordingly ordered it to be entered simply in dollars.

*M. S. Bonnifield*, for Appellant.

*P. H. Harris*, for Respondent.

By the Court, LEWIS, C. J.

Whether a judgment for coin in accordance with Section 2 of

an Act of the Legislature of this State, entitled "An Act amend_
atory of and supplementary to an Act entitled ' An Act to regulate
proceedings in civil cases in the Courts of Justice of the Territory
of Nevada,' " rendered upon a special promise to pay that character
of money, is repugnant •to the Act of Congress making Treasury
notes a legal tender, and if not, whether we are bound to follow the
decisions formerly rendered by this Court holding otherwise, are
the only questions submitted for determination upon this appeal.

Upon the first question we have found no difficulty in arriving at
the conclusion that there is nothing in the laws of Congress pro-
hibiting the enforcement of contracts for the payment of coin in
accordance with their strict letter, by a judgment rendered for the
kind of money agreed to be paid.    Although entertaining the pro-
foundest respect for the upright and able Judges who rendered the
decision in *Milliken* v. *Sloat,* (1 Nev. 585) we are constrained by
the force of unanswerable reasoning to differ from the conclusion at
which they arrived.  The ground taken by the learned Judges was
that the Act of the Legislature known as the Specific Contract Act
is in conflict with the Act of Congress making treasury notes a legal
tender, because it denies the right to the debtor to discharge those
debt in treasury notes which he specifically agreed to pay in coin.
This, it is said, engrafts an exception upon the Act of Congress—or
rather restricts its terms to general debts, whilst its comprehensive
language includes all characters of debts, whether made payable in
coin or not, save those expressly excepted by Congress itself.   The
fallacy of the conclusion arrived at in that case appears to have
originated in the assumption that the General Government was
directly and immediately interested in having all debts paid in
treasury notes, and that the Act of Congress making them a legal
tender was enacted to further that interest; whereas, as a matter of
fact, the Acts of Congress indicate nothing of the kind, but treasury
notes and gold are both alike made a legal tender, the General
Government having in no wise expressed or indicated a purpose or
desire to enforce the use or circulation of one in preference to the
other.   The laws declaring what shall be a legal tender must be
taken together and construed as one act.   And by so doing we find
that gold and treasury notes are both declared to be lawful money

and a legal tender, for the payment of debts public and private and nothing more. Thus the inference from the Acts of Congress is irresistible that it is a matter of indifference to the Government whether individual debts be paid in one currency or the other. Nothing is clearer than that the right to discharge a debt in notes is simply a privilege given to the individual. That the Act of Congress does not make it the duty of any person to employ notes in preference to gold; or to pay a debt contracted by him in one rather than the other, seems to be unquestionable. Is it not then equally evident that this law leaves it entirely optional with the individual which of the two he will use in the transaction of his business or the payment of a debt? It undoubtedly is. The right to pay a debt in notes being a mere privilege granted to the person, in the exercise of which the Government has no interest, may be waived by the individual to whom it is granted, as all mere personal privileges or civil rights may be, where to do so is not in contravention of public policy, or contrary to good morals. (Broom's Maxims, 624 to 630.)

But there is nothing in a contract to pay a given sum in gold coin or any other kind of money that is immoral, or that in any respect contravenes public policy. It has never been prohibited " either expressly or by implication, and no policy against the making of such contracts has in any manner been indicated on the part of the Government. The Government has created three kinds of money, which it has provided shall be legal tender in the payment of debts—gold coin, treasury notes, and silver in limited amounts; but it has nowhere intimated in the remotest degree a preference for any one of these kinds of money over the others." Such being the case, we are unable to see how the specific enforcement of an agreement to pay either kind can in any way be in contravention of public policy. Indeed, Congress itself has set all doubts upon this question at rest by the enactment of laws expressly authorizing contracts for the delivery of gold coin. (Act of March 3d, A.D. 1863, 12 Statutes at Large, page 119; Id. page 711, Section 5.) A contract to *pay* gold coin at a future day can certainly be no more in contravention of public policy than the contracts thus authorized by Congress itself.

But we consider it entirely unnecessary to enter at length into a discussion of this question, for little if anything can be added to the exhaustive and able opinion delivered in the case of *Carpentier* v. *Atherton,* (25 Cal. 564) where, upon what appears to us to be irrefragable reasoning, the conclusion is attained that a judgment for coin is not repugnant to the Act of Congress making treasury notes a legal tender.

This seems, also, to be the opinion of the Supreme Court of the United States. See *Thompson* v. *Riggs,* (5 Wallace, 663) where this language is used: " Contracts between a banker and his customers are doubtless required to be performed, and must be construed in the same way as contracts between other parties. Where the banker specially agrees to pay in bullion or in coin, he must do so, or answer in damages for its value ; and so if one agrees to pay in depreciated paper, the tender of that paper is a good tender, and in default of payment, the promisee can recover only its market and not its nominal value. But where the deposit is general, and there is no special agreement provided, the title of the money deposited, whatever it may be, passes to the bank, and the transaction is unaffected by the character of the money in which the deposit is made, and the bank becomes liable for the amount as a debt, which can only be discharged by such money as is by law a legal tender."

This, it is true, has not the weight of authority, for the question here involved was not a point decided in that case. If it had been, it would perhaps be decisive of this, for that Court is certainly the highest authority upon the question as to whether an Act of Congress has been violated or not. It, however, indicates the opinion of that tribunal, and is entitled to some consideration at least. The reasoning of the Courts in the cases above referred to is so perfectly satisfactory to us that we cannot avoid the conclusion that the decision in *Milliken* v. *Sloat* is totally untenable upon legal principles.

But admitting it to be erroneous, should this Court notwithstanding follow it as the law of this State ? It is a rule universally recognized by the Courts that a decision once made upon due deliberation ought not to be disturbed by the same Court, except

upon the most cogent reasons and upon undoubted manifestation of error. (1 Kent's Com. 476.) But where it is perfectly apparent that a decision is erroneous, or misstates the law, it then becomes a question of policy whether it should be followed or not. If a manifestly erroneous decision has become the foundation of title to property, or has entered into the commercial system of the country, it would generally operate more unjustly to overturn than to recognize it as the law. When such is the case, the Courts often feel themselves bound to follow even a flagrantly erroneous decision.

Chancellor Kent, speaking of this subject, observes: " But I wish not to be understood to press too strongly the doctrine of *stare decisis* when I recollect that there are more than a thousand cases to be pointed out in the English and American books of reports which have been overruled, doubted or limited in their application. It is probable that the records of many of the Courts in this country are replete with hasty and crude decisions, and such cases ought to be examined without fear, and reversed without reluctance, rather than to have the character of our law impaired and the beauty and harmony of the system destroyed by the perpetuity of error. Even a series of decisions are not always conclusive evidence of what is law, and the revision of a decision very often resolves itself into a mere question of expediency depending upon the consideration of the importance of certainty in the rule, and the extent of property to be affected by a change of it." In overruling a former decision of long standing made by itself, the Court of Errors of the State of Mississippi (2 Smedes & M.) says: " We are fully sensible that the stability of jurisprudence requires an adherence to the decisions of Courts. If solemn judgments once made are lightly departed from, it shakes the public confidence in the law, and throws doubt and distrust on its administration. Yet even this backwardness to interfere with previous adjudications does not require us to shut our eyes upon all improvements in the science of the law, or require us to be stationary while all around is in progress. * * *. Perhaps no general rule can be laid down on the subject. The circumstances of each particular case, the extent of influence upon contracts and interests which the decisions may have had, whether it may be only doubtful or clearly

against principle, whether sustained by some authority or opposed
to all: these are all matters to be judged of whenever the Court is
called on to depart from a prior determination." After a full
review of the authorities upon this question, the Supreme Court of
California sums up its conclusion in this very forcible manner:
" Apart from all express authority, reason must convince us that
no such inexorable rule could exist. The rule itself implies that
the doctrine protected by *stare decisis* cannot stand by itself. But
it is a solecism to say that causes should be tried upon wrong prin-
ciples—be decided against the law—whether it be for the purpose
of justice or not, so to decide them. The law is not so false to
itself as to require its own permanent overthrow, unless the sub-
version be necessary to the public interests; and whether it be so
necessary in a given case or not, is for the Court to decide as a
matter of legal discretion, whenever the rule is invoked. For, as
the rule of *stare decisis* is avowedly put upon the ground of policy,
we cannot conceive that the application of the rule could be rightly
so made as to overthrow the paramount public policy of deciding
causes by the rules of the law when these rules work justice and
do equity in the major part of the cases to which they apply, and
protect the rights of the many against the claim of the few."

We are inclined to give to the doctrine of *stare decisis* as great
weight and consideration as is given to it by any of the Courts.
We are of the opinion that no deliberate decision should be reversed
by the same Court where it has been generally accepted as the
law, or whenever a reversal of it would be likely to disturb any
right of property or derange any general commercial custom. But
if a decision be clearly incorrect, and no injurious results will be
likely to flow from a reversal, and especially if it be injurious and
unjust in its operation, it is, it seems to us, the imperative duty of
the Court to reverse it. Certainty in the law is doubtless greatly
to be desired, and if there were no other consideration, that of it-
self is sufficient to suggest the necessity of a strict adherence to de-
cided cases. However, notwithstanding our willingness to give to
this consideration the greatest possible weight, it is not, we think,
sufficient to justify us in blindly adhering to a decision manifestly
erroneous, and which is productive only of wrong and injustice.

That the case of *Milliken* v. *Sloat* is erroneous ; that to overrule it will disturb no rights of property, nor any commercial custom, we are thoroughly satisfied. The reasoning in the case of *Carpentier* v. *Atherton* very clearly maintains the right of the Courts to render a judgment for coin upon an agreement to pay it, and in our opinion the learned Judges who delivered the opinions in *Milliken* v. *Sloat* entirely failed to answer it. That no right of property can be disturbed by the reversal of the latter decision, is manifest from the very nature of the case ; and as to deranging any commercial system, it is enough to say that the moral sense of the community has repudiated it from the moment it was rendered, and it has only been invoked by that class of persons whose moral obliquities are such that they can perceive no wrong in the violation of a deliberate and fair contract, provided the law gives them protection, or fails to afford a remedy against them. The commercial business of the State has been as generally transacted on a coin basis since the decision in *Milliken* v. *Sloat* as it was before, the community relying upon individual honor and sense of right for that security which the law denied to it. All the hazards necessarily resulting from such a state of things have not been sufficient to force the people of this State to adopt the paper currency of the country as a general medium of commercial transactions. Indeed, beyond giving legal sanction to the violation of contracts, and enabling the dishonest debtor to defraud his creditor, the employer to deprive the laborer of thirty per cent. of the wages of his industry, the decision has been a dead letter—virtually overruled by the moral power of the upright portion of community. Its effects have been pernicious, and cannot be otherwise in the future. Can it be said, then, that it is the duty of the Court to follow it ? We think not. The Court below must therefore be directed to render a judgment for coin, in accordance with the terms of the contract sued on. So ordered.

By JOHNSON, J., concurring.

I concur with my associates of the Court in the conclusion attained in the foregoing opinion, upon both points therein discussed. I also concur in the judgment.