# CLYDE GEORGE IBSEN, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 5111

January 10, 1967 422 P.2d 543

*Mann & Scott,* of Elko, for Appellant.

*Harvey Dickerson,* Attorney General, *Donald Leighton,* District Attorney, Humboldt County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Delbert Howard, a well-known resident of Winnemucca, was last seen alive near his residence on July 8, 1965. Suspicions aroused, authorities began a search for the missing Howard. It was not until Clyde George Ibsen was arrested in Sarasota, Florida, July 20th, that the veil of mystery began to lift. There, Ibsen, under arrest for vagrancy, gave information in the first of a series of interrogations by law enforcement officers that ultimately turned the key on his jail door for the rest of his life. On December 15, 1965, he was convicted of murder and sentenced to prison for life without possibility of parole. Ibsen appeals from that conviction.

Of the several assignments of error, first and foremost our attention is directed to the contention that Ibsen was denied his constitutional right to counsel. We must decide this case, of course, in conformity with the decisions of the Supreme Court of the United States. The revelations of the voluminous record lead inescapably to the conclusion that the capable and expert investigation notwithstanding, an error by the justice of the peace was so inherently prejudicial that we are compelled to order that this case be remanded for another trial.

1.　Extending umbrella-like over the entire episode, was the continuing concern over the whereabouts of Delbert Howard. All that was known was that he had disappeared and that, four days after his absence, someone not resembling Howard was observed trying to cash a check on his account in Las Vegas, several hundred miles from his residence in Winnemucca. An all-points bulletin describing Howard's car resulted in Ibsen's arrest in Sarasota, Florida. Also in Ibsen's possession were some of Howard's personal effects. There were signs of blood in the car.

Miranda v. Arizona, 384 U.S. 436 (1966), had not yet been decided. Our attention must then be directed to the fundamental Sixth Amendment right to counsel prescribed by Escobedo v. Illinois, 378 U.S. 478 (1964).

From his arrest July 20, 1965, in Sarasota, Florida, until his final confession to the District Attorney of Humboldt County,

September 8, 1965, Ibsen was in continuous custody. He was interrogated seven times by F.B.I. agents; four times in Sarasota, and three times by Agent Bell in Winnemucca. We reject the state's contention that the F.B.I. interrogations of Ibsen were directed solely to the federal violation with which he was charged in Florida. Before each interrogation he was fully informed of his rights. The trial resolved that he did not request an attorney at any of the questioning sessions, and the record does reflect that his statements in Sarasota were voluntarily given.

On July 29, Ibsen was returned to Winnemucca from Florida and taken before the justice of the peace on a state charge of the unlawful taking of a motor vehicle. At that time in court he requested that an attorney be appointed for him. The justice of the peace advised him that he had no authority to appoint one for him. At the same proceeding the preliminary hearing date was set for August 30, over a month away.

Thereafter on August 13, 1965, from his jail cell, he wrote the justice of the peace demanding an immediate preliminary hearing. In a separate letter dated September 3, 1965, he again requested appointment of an attorney. No action was taken on either request.

On September 7th, he was brought before the justice of the peace and agreed to September 15th as the date for his preliminary hearing and again he requested appointment of an attorney and was refused. The justice of the peace was unaware of NRS 171.370 (approved April 3, 1965, five months prior to Ibsen's appearance before the justice of the peace) which outlines the avenue by which an indigent may obtain court-appointed counsel at the justice of the peace level.[1]

In the meantime, on July 30 and July 31, he was questioned

---

[1]NRS 171.370. *"Magistrate to inform defendant of charge and his right to counsel; procedure for appointment of attorney for indigent defendant.*

"1. When the defendant is brought before the magistrate upon an arrest, either with or without a warrant, on a charge of having committed a public offense, the magistrate must immediately inform him of the charge against him, and of his right to the aid of counsel at every stage of the proceedings, and before any further proceedings are had.

"2. Any defendant charged with a felony or a gross misdemeanor who is an indigent may, by written application addressed to the district court and delivered to the magistrate, request the appointment of an attorney to represent him.

"3. The application shall be accompanied by the defendant's affidavit, which shall state:

(a) That he is without means of employing an attorney; and

by F.B.I. Agent Bell. Finally, on August 1, he told Bell that he killed Howard with a coke bottle and threw the body in the Pacific Ocean. The method of killing, and the details of the disposal of the body were untrue. These omissions, however, were supplied on September 8th, after two cell mates, the Mullins brothers, obtained from Ibsen a map drawn by him of the location of Howard's body.

The interrogations prior to being taken before the justice of the peace on July 29 met constitutional requirements. Ibsen was alert, intelligent, and aware of the reason for the investigation from the date of his arrest. At his earlier interviews with F.B.I. agents he told of his background which included two years' college education. The right to remain silent was known to him at all stages, and he acknowledged all of his rights and chose to talk. When he chose not to talk he said so, and interrogation ceased.

However, the failure of the justice of the peace to fully advise Ibsen of his right to counsel and the method of obtaining an appointed attorney to represent him when he requested one deprived appellant of his constitutional right to be represented thereafter by an attorney. The day following the second appearance before the justice of the peace (when he was again refused an attorney September 8, 1965), the district attorney told Ibsen that through the information supplied by the Mullins', Howard's body was found. Had counsel been appointed as required, the district attorney could not have thereafter talked to Ibsen, absent appointed counsel's approval. Nor can it be contended that Ibsen waived his right to counsel when he conferred with the district attorney since he had already learned from the justice of the peace that counsel could not be appointed for him. The district attorney's admonition that Ibsen could have counsel became ineffectual, in view of the court's prior statement. Naturally, it would appear to him then to be a fruitless request. One cannot waive a right which he does not think he has. Ibsen was entitled to rely on the court's advice rather than the district attorney's. The "guiding hand

(b) Facts with some particularity, definiteness and certainty concerning his financial disability.

"4. The magistrate shall forthwith transmit the application and affidavit to the appropriate judge of the district court. If, after reading the application and affidavit and conducting such further inquiry as he may deem necessary, the judge finds that the defendant is without means of employing an attorney, the judge shall appoint an attorney or designate the public defender to represent him."

of counsel" was essential to advise petitioner * * * in this delicate situation. Powell v. Alabama, 287 U.S. 45, 84 A.L.R. 527 (1932). After the confessions to the district attorney, Ibsen was then charged with murder on September 9, 1965, and counsel was provided for him.

The circumstances commanded the appointment of an attorney. Any concern that a "guilty" defendant would go free disappeared in the face of the evidence already known to the law enforcement officials. They had Ibsen in possession of Howard's personal possessions, and his car. He admitted having been with Howard. With the finding of the body, his purchase of a pistol in Winnemucca was linked to the method of the killing. He was identified at the trial as the person who tried to cash Howard's check on Howard's account using Howard's personal identification in Las Vegas.

With all these facts, the district attorney took Ibsen's confession anyway. Its admission into evidence was error prejudicial in itself. Hamilton v. Alabama, 368 U.S. 52 (1961); White v. Maryland, 373 U.S. 59 (1963). The defendant testified at the trial and told the entire story as he had related it in his confession to the district attorney and to Agent Bell. His defense was largely based on self defense against an alleged homosexual attack. Without the confessions, defendant may have availed himself of the right not to testify. He was denied the freedom of choice because of the prejudicial atmosphere and by the fact there was no attorney to guide him at a time when he was incapable of freely making his own decisions.

We were forewarned in the dissenting opinion of Mr. Justice Douglas in Crooker v. California, 357 U.S. 433 (1958), when he said, "The court properly concedes that the right to counsel extends to pretrial proceedings as well as to the trial itself * * *. The demands of our civilization expressed in the due process clause require that the accused who wants a counsel should have one at any time after the time of arrest." With the advent of Escobedo v. Illinois, supra, that view became the law.

We are, of course, familiar with the landmark case of Gideon v. Wainright, 372 U.S. 335 (1963), where in the State of Florida, Gideon, in custody for a felony and being indigent, requested the State court that an attorney be appointed to represent him, which request was denied. "Reason and reflection," stated the Supreme Court of the United States, "require us to recognize that in our adversary system of justice any

person hailed into court who is too poor to hire a lawyer cannot be assured to a fair trial unless counsel is appointed for him."

Gideon established the right to an attorney at the trial stage of criminal proceedings. Escobedo established the right to be represented by an attorney, under special circumstances, at the jailhouse before he gets to the courtroom. An indicted defendant cannot be interrogated under any circumstances in the absence of his attorney without having his 6th Amendment right to counsel impaired. Massiah v. United States, 377 U.S. 201 (1964) (made binding on the states by McLeod v. Ohio, 381 U.S. 356 (1965)).

Massiah v. United States, supra, "* * * A constitution which guarantees a defendant the aid of counsel at * * * trial could surely vouchsafe no less to an indicted defendant under interrogation by the police in a completely extrajudicial proceeding. Anything less * * * might deny a defendant 'effective representation by counsel at the only stage when legal aid and advice would help him.' 360 U.S., at 326 (Douglas, J., concurring.)"

Recognition of this fundamental concept was given in the 1965 session of the Nevada Legislature when it enacted NRS 171.370 which provides an indigent with court-appointed counsel. Obviously, the justice of the peace in Winnemucca did not know of this statute but his unawareness cannot overcome the resulting prejudice.

Unconstitutional confessions fall within the rule of "automatic reversal." Prejudice is presumed.

2. The Mullins brothers were in custody for the commission of a criminal offense. Ibsen drew a map for them showing the location of Howard's body, with the idea that the Mullins brothers would dispose of the body when they got out of jail. Instead, they gave the map to the district attorney.

The record supports the conclusion that the Mullins brothers acted independently of any agency relationship with the law officials. While they were encouraged to learn what information they could from Ibsen, and were later rewarded for their success, they were unrelated to the State except as informers as that term is applied in ordinary police detection. The testimony of the Mullins brothers was admissible. People v. Flores,

46 Cal.Rptr. 412, 415 (1965); People v. Teale, 404 P.2d 209, 219-220 (Cal. 1965).

3. Another alleged error occurred during the trial court's voir dire hearing concerning the admissibility of the statements and confessions. Defendant had testified to his version of the events surrounding the interrogations and in rebuttal the trial judge called the F.B.I. agents into the courtroom. He proceeded to read the defendant's testimony to them, then asked the agents if the testimony was true or false. Appellant contends that this procedure violated the exclusion of witnesses' rule which had already been invoked.[2]

The unusual procedure was wrong, but the deviation was not sufficiently harmful by itself to constitute reversible error. See Rainsberger v. State, 76 Nev. 158, 350 P.2d 995 (1960), decided before NRS 175.167 enacted in 1961.

4. The remaining specifications of error are without merit. Reversed and remanded.

THOMPSON, C. J., and COLLINS, J., concur.

---

[2]NRS 175.167. *"Exclusion of witnesses during trial.* Upon request by either party, the judge may exclude from the courtroom any witness of the adverse party, not at the time under examination, so that he may not hear the testimony of other witnesses. However, such exclusion shall not apply to the district attorney or his deputy or to any counsel or cocounsel for the defendant who is actually engaged in the prosecution or defense of such trial."