JOSEPH MILES WALKER, PETITIONER, v. JACK FOG-LIANI, WARDEN, NEVADA STATE PRISON, RESPONDENT.

No. 5240

April 3, 1967                    425 P.2d 794

*John Squire Drendel* and *Jerry Carr Whitehead,* of Reno, for Petitioner.

*Harvey Dickerson,* Attorney General, *George G. Holden,* Deputy Attorney General, and *William J. Raggio,* District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

Joseph Miles Walker has filed a petition for a writ of habeas corpus with this court seeking release from prison on the ground that he was denied certain constitutional rights at trial. We believe that his contention is sound.

Joseph Miles Walker was convicted of murder and sentenced to death. The conviction was affirmed. Walker v. State, 78 Nev. 463, 376 P.2d 137 (1962).[1] Certiorari was denied by the U.S. Supreme Court (Walker v. Nevada, 375 U.S. 882 (1963)). Walker then petitioned the U.S. District Court for a writ of habeas corpus contending (1) that he was denied the right of counsel, and (2) that there was an accumulation of errors during his trial in the state court which considered

---

[1]The majority of the three-judge Nevada Supreme Court held that the errors committed by the trial court were "harmless." JUSTICE THOMPSON, dissenting, took the view that since the jury fixed death as the punishment he could not say that the errors were harmless.

in the aggregate deprived him of a fair trial in accordance with due process of law. The Federal District Court denied the petition. On appeal the Ninth Circuit Court of Appeals reversed and remanded directing that the district court enter its order holding further proceedings in abeyance to afford Walker a reasonable opportunity to apply to the Nevada courts for their re-examination of the question of whether or not in the light of Escobedo v. Illinois, 378 U.S. 478 (1964), he was denied the benefit of counsel. United States v. Fogliani, 343 F.2d 43 (9th Cir. 1965). Complying with that order, a hearing was held in the state trial court below on the question narrowed to Walker's assertion that he had asked for the assistance of counsel but that it had been denied. The trial court found from the hearing that Walker had not requested an attorney. Whether or not such a request was made is now immaterial in that the United States Supreme Court in Johnson v. New Jersey, 384 U.S. 719, 16 L.Ed.2d 882 (1966), has ruled that the doctrine of Escobedo need not be applied retroactively. We turn, therefore, to the second point.

The clear and unmistakable purport of the Ninth Circuit Court of Appeals to the second point in issue compels another review of the aggregate of trial court errors as constituting grounds for a new trial. "Conceding that the contention presents an issue worthy of serious consideration our meeting it now would overlook the possibility of its elimination by future developments in orderly and proper procedure." United States v. Fogliani, supra, p. 48.

The court in the first appeal acknowledged three trial court errors but disclaimed them as harmless. The so-called harmless errors included (1) the remark by the prosecuting attorney in his opening statement to the effect that appellant was apprehended at the Oklahoma State Penitentiary (2) the asking by the prosecutor of a question of a witness during the presentation of the prosecution's case in chief of a question concerning homosexuality when the prosecutor, after objection, admitted that he could not connect the subject of homosexuality with the appellant, and (3) the refusal to grant the motion by defense counsel for the production of a written report of the investigation made by a police officer who testified for the prosecution.

We do not believe that the strong current of present judicial authority permits the sort of errors which together are so serious as to amount to a denial of a fair trial. In Chapman v. California, 386 U.S. 18 (1967), the U.S. Supreme Court decided that the harmless error rule merely blocks the setting

aside of convictions for small errors or defects and that before a constitutional error can be held harmless the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

Reference to past criminal history is reversible error. Marshall v. United States, 360 U.S. 310 (1959); Michelson v. United States, 335 U.S. 469 (1948); Boyd v. United States, 142 U.S. 450 (1892); Vol. 1, Wigmore, Evidence § 193–94 (3rd ed. 1940). Refusal to allow production of the written statement deprived defendant of his valuable right to impeachment by cross-examination. Pointer v. Texas, 380 U.S. 400 (1965). Incidence of homosexuality in the prison, particularly when the prosecutor admitted that it had no relevancy whatsoever to the defendant, could only contribute adversely to the already prejudiced climate of the trial proceedings. The Ninth Circuit Court clearly indicated that the errors were not harmless, nor can we say otherwise in view of Chapman, that the errors complained of were harmless beyond a reasonable doubt.

The danger of allowing prejudicial remarks and testimony during a trial is not confined to their momentary effect upon the jurors. Trial tactics are influenced immeasurably. Counsel is forced to object and argue repeatedly. Defendant may be compelled to testify when it is his right not to do so. Ibsen v. State, 83 Nev. 42, 422 P.2d 543 (1967).

This reversal for a new trial is a hard burden to bear because Walker is a confirmed criminal. But it is a proud tradition of our system that every man, no matter who he may be, is guaranteed a fair trial. As stated by Chief Justice Traynor in People v. Cahan, 282 P.2d 905, at 912 (Cal. 1955), "Thus, no matter how guilty a defendant might be or how outrageous his crime, he must not be deprived of a fair trial, and any action, official or otherwise, that would have that effect would not be tolerated."

The requisites of a trial free of prejudicial atmosphere are too deeply implanted to require repetition; for when the death penalty is executed, its consequences are irretrievable. A fair trial therefore is a very minimal standard to require before its imposition. In order that all people be assured of fair trials, Walker, and the likes of him, must be likewise so assured. He has not had that fair trial.

We must be certain that he be tried free of prejudicial error. Were we to pass on this responsibility under the present circumstances to a higher court, the extensive delay before the next hearing might well make another trial impossible.[2] This is not necessarily true now, but our determination cannot turn on that consideration. Our judgment, delicate as it may be, is that on the state of this record due process of law has been denied under the federal and state constitutions and the conviction cannot stand. It is ordered that the writ of habeas corpus must issue and Walker be discharged unless the State gives him a new trial within a reasonable time. Pate v. Robinson, 383 U.S. 375, 386 (1966); Schnepp v. Fogliani, 83 Nev. 131, 425 P.2d 141 (1967).

THOMPSON, C. J., concurring:

On appeal from the conviction, I dissented from the majority of the court. Walker v. State, 78 Nev. 463, 474, 376 P.2d 137, 142 (1962). It was then my view that the conviction should be set aside and a new trial accorded Walker, since multiple substantial errors had resulted in a denial of due process under the federal and state constitutions. The passing of time has not caused me to come to a different conclusion, and I concur fully with the opinion of MR. JUSTICE ZENOFF.

The "law of the case" doctrine which seems to be the basis of the present dissent of MR. JUSTICE COLLINS, is, I think, wholly inappropriate to the matter at hand. A state supreme court is not the final arbiter of federal constitutional rights. In this area, federal supervision of state criminal justice has existed throughout our history. See: Judiciary Act of 1789, ch. 20, § 25, 1 Stat. 85, providing for direct review by the Supreme Court of state decisions that turn on a question arising under the federal constitution; Judiciary Act of 1867, ch. 28, § 1, 14 Stat. 385, providing for the review of state convictions by federal habeas corpus. Mr. Justice Frankfurter wrote in Brown v. Allen, 344 U.S. 443 (1953): "Insofar as this jurisdiction enables federal district courts to entertain claims that state supreme courts had denied rights guaranteed by the United States Constitution, it is not a case of a lower court sitting in judgment on a higher court. It is merely one aspect of respecting the Supremacy Clause of the Constitution whereby Federal

---

[2] "* * * The courts of Nevada are entitled * * * to have the first opportunity to consider the problem which has now arisen on account of the decision in Escobedo * * *." United States v. Fogliani, supra, page 47.

law is higher than State law. It is for the Congress to designate the member in the hierarchy of the federal judiciary to express the higher law. The fact that Congress has authorized district courts to be the organ of higher law rather than a Court of Appeals, or exclusively this Court, does not mean that it allows a lower court to overrule a higher court. It merely expresses the choice of Congress how the superior authority of federal law should be asserted."

It, therefore, is apparent that the prior opinion of this Court in Walker v. State, supra, cannot have the overriding significance given it by Mr. Justice Collins, since the court of appeals for the ninth circuit has strongly indicated its disapproval of that decision. See: United States v. Fogliani, 343 F.2d 43, 48 (9 Cir. 1965). That court wrote: "No present purpose would be served by extended and detailed discussion of the second ground of appellant's petition, that in which it is urged that an accumulation of errors in the state trial proceedings resulted in a trial so substantially unfair as to violate federal requirements of due process. Conceding that the contention presents an issue worthy of serious consideration, our meeting now would overlook the possibility of its elimination by future developments in orderly and proper procedure." The case was then remanded to the state district court for further proceedings. I read the quoted language to mean that the State of Nevada should have the first opportunity to correct the constitutional infirmity of Walker's conviction, and if we choose not to do so, the federal court, on a later application, will.

COLLINS, J., dissenting:

I cannot agree with the reasons given by the majority of the court in reversing the conviction and granting a new trial. In effect the majority opinion reverses a prior decision of this court. Shambles are being made of the ancient doctrine of "the law of the case." "It is a rule universally recognized by the Courts that a decision once made upon due deliberation ought not to be disturbed by the same Court, except upon the most cogent reasons and upon undoubted manifestation of error." Linn v. Minor, 4 Nev. 462, 465 (1868). "Whenever a cause has been once fairly tried and finally determined, by a competent tribunal, the same questions, as between the same parties, ought not to be tried over again. They should be considered as forever settled. This rule is necessary for the repose of society. It is in the interest of the public that there should be an end of litigation." McLeod v. Lee, 17 Nev. 103, 112 (1882). Points once settled in the Supreme Court should not

be unsettled except for very weighty reasons. Nev.-Cal. Transportation Co. v. Commission, 60 Nev. 317, 108 P.2d 850 (1941).

Furthermore, the reversal is on fewer grounds of contended error than were before this court previously. My colleagues accept the finding of the trial judge on the evidentiary hearing held pursuant to order of the Ninth Circuit Court of Appeals regarding the confession. Thus they accept as true the deputy warden's statement that Walker did not request an attorney prior to talking to the district attorney of Washoe County in Ardmore, Oklahoma. That being so, the confession was properly admitted in evidence by the original trial court and the jury could give it such weight as it chose.

Three errors remain, all of which were specifically passed upon by this court previously, Walker v. State, 78 Nev. 463, 376 P.2d 137 (1962), and ruled harmless. They include (1) the remark of the prosecuting attorney in his opening statement to the effect that appellant was apprehended in the Oklahoma State Penitentiary; (2) the asking by the prosecution of a question of a witness during the presentation of the prosecution's case in chief concerning homosexuality when the prosecution, after objection, admitted that he could not connect the subject of homosexuality with appellant; and (3) the refusal to grant the motion of defense counsel for the production of a written report of the investigation made by a police officer who testified for the prosecution.

It becomes pertinent to recall what this court previously said about those points, especially in view of the now changed posture of the case where admission of the confession of Walker is no longer a point of contention. Regarding point (1), this court said at page 466, 78 Nevada, "In his opening remarks to the jury the district attorney, over the objection of appellant, was permitted to state that appellant was apprehended at the Oklahoma State Penitentiary in McAlester, Oklahoma.

"This statement was improper because it connotes the commission of an offense by appellant other than the one for which he was being tried. The objection, therefore, should have been sustained. State v. Lindsay, 63 Nev. 40, 161 P.2d 351.

"The appellant, however, was not prejudiced by this opening remark because the place of apprehension was contained in appellant's written confession and mentioned by him in his oral testimony." Walker's confession being ruled admissible, the error clearly becomes harmless.

As to point (2), this court said on pages 466 and 467 of

78 Nevada, "During the direct examination of prosecution witness Gladden, the district attorney asked: 'Now, based on your experience as a deputy warden at the Oklahoma State Penitentiary, and your some eight years' experience altogether at the prison, and based on your close contact with the inmate personnel, can you state the incidence of homosexuality with the inmate population?'

"Appellant's counsel objected to the question and moved that it be stricken from the record.

"The district attorney maintained that the question was relevant to motive, saying: 'One of the theories of the State's case will be that, in addition to robbery, this was a homicide in the perpetration of a homosexual act.' However, when questioned by the court, he admitted that he did not intend to show that Gladden had any knowledge of the appellant in this respect.

"The district attorney erred in asking the question, but no intentional misconduct appears as would justify a reversal on that ground. People v. Doetschman, 69 Cal.App.2d 486, 159 P.2d 418.

"The court sustained the objection and stated to the jury: 'The Court instructs you that under all the facts and circumstances of this case, and the state of the evidence to date, this is an improper question. The Court has sustained an objection to it. I ask you to completely disregard it, wipe it out of your minds, and let it have no more effect upon you than if this question had never been asked.'

"Appellant did not move for a mistrial. As heretofore stated, he objected to the question and moved that it be stricken. The court's action was in exact compliance with appellant's request and, consequently, he cannot complain of the court's ruling in this regard. In view of appellant's admissions that he committed the homicide in question, we are of the opinion that the mere asking of the question did not affect any substantial right of the appellant or prevent him from having a fair and impartial trial." We again are concerned with the jury's trustworthiness in following an explicit instruction from the trial court as to the performance of its duty. The immediate prejudice was not so apparent at the exact moment of the happening of the event as this court noted, because appellant did not then move for a mistrial. The whole atmosphere of prejudice, or the lack of it, could have been deeply and realistically explored by the trial court and counsel at the very moment it took place. Appellant's counsel was, for the moment, satisfied with the court's ruling which found no prejudice to have existed. Are we, or any other appeal court, so perceptive or clairvoyant to

be able now, some six years later, from a cold, printed record to substitute our judgment for that of the trial judge and counsel on the scene and engaged in the proceeding? The time to make a critical determination of prejudice is at and during the trial by the trial judge when the parties, their counsel, the jury and all other relevant factors to make a rational judgment are present. This court in its earlier opinion on the exact point and for solid reasons found the error to be harmless. I agree and do not feel we are warranted or compelled, as my colleagues believe, to reconsider the point. Otherwise, we in the judiciary are making determination of public and private rights under the law an endless treadmill dependent upon the ebb and flow of legal opinion to the end we are gobbled up by refinement on top of refinement.

Turning to the third point, this court said on pages 468 and 469 of 78 Nevada, "Nevada Wise, a Reno police officer, who on September 24, 1960, spent two hours examining the pickup camper, its contents, and the body of the victim, testified on cross-examination that he had made a written report of this investigation. Appellant thereupon made a motion to produce the written report so that he could further cross-examine the witness. This motion was denied. We are of the opinion that the trial judge should have granted the motion to produce. State v. Bachman, 41 Nev. 197, 168 P. 733; People v. Rosario, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881. Its refusal to do so is not reversible error if no substantial right of the appellant was prejudiced by the trial court's erroneous ruling. NRS 169.110.

"Wise testified on direct examination that he had gone to the pickup camper to photograph the scene and to process it for latent fingerprints, and that he took photographs of the exterior and interior of the camper. Some of these photographs were received in evidence after Wise had testified that they correctly and accurately portrayed that which they purported to portray. Wise also identified certain articles received in evidence which appeared in the photographs. This testimony was corroborated by Officers Williams and Manin who were present while Wise was making the investigation and taking the photographs. The photographs depicted a stab wound in decedent's back, the tied hands, and blankets and other articles covering the body.

"Appellant in his written confession admitting stabbing and tying the hands of the victim and later covering the body. At the trial he testified that the confession as given was accurately transcribed except for certain discrepancies which he pointed out and described as being very minor.

"Under these circumstances we cannot conceive how Wise's testimony could have been materially impeached by his written statement, or how the failure to furnish appellant the statement was in any way prejudicial."

Can we say that this court did not give fair and candid consideration to the point? Perhaps if I were called upon to pass upon the point initially I might have taken a different stand. However, I am impressed with the point made by MR. JUSTICE THOMPSON in his dissent where he said at page 478, "Though the rule announced in Jencks [353 U.S. 657 (1957)] appears, at this time, to be a rule of procedure and not binding on state courts, it is most persuasive." However, when this one procedural error is balanced against all other admissible evidence, including the appellant's confession, I am persuaded it is harmless, notwithstanding severity of the punishment inflicted upon Walker. I do not feel Pointer v. Texas, 380 U.S. 400 (1965), relied upon by the majority, is controlling authority on this point.

That brings us to the point whether we are bound to follow the expression of opinion of the Ninth Circuit Court of Appeals, Walker v. Fogliani, 343 F.2d 43, at 48, when it states, "No present purpose would be served by extended and detailed discussion of the second ground of appellant's petition, that in which it is urged that an accumulation of errors in the state trial proceedings resulted in a trial so substantially unfair as to violate federal requirements of due process. Conceding that the contention presents an issue worthy of serious consideration, our meeting it now would overlook the possibility of its elimination by future developments in orderly and proper procedure." I feel we have the right and duty to make our own judicial determination upon the issues and apply the law, both state and federal, as we understand it, under our oath as judges. As state judges, I believe our role is to give practical effect and meaning to the decisions of the United States Supreme Court, and to apply them faithfully when duty requires it. But where the facts are different, even by a shade, we should be realistic and practical in our judicial pronouncements. We should follow cautiously, not try to outleap the federal courts.

The majority opinion relies heavily upon the case of Chapman v. California, 386 U.S. 18 (1967). I do not read Chapman to be applied retroactively, nor has the Supreme Court so ruled yet. Moreover, the majority opinion in that case said at page 4, "We are urged by petitioners to hold that all federal constitutional errors, regardless of the facts and circumstances, must always be deemed harmful. Such a holding,

as petitioners correctly point out, would require an automatic reversal of their convictions and make further discussion unnecessary. We decline to adopt any such rule. All 50 States have harmless-error statutes or rules, and the United States long ago through its Congress established for its courts the rule that judgments shall not be reversed for 'errors or defects which do not affect the substantial rights of the parties.' 28 U.S.C. § 2111. None of these rules on its face distinguishes between federal constitutional errors and errors of state law or federal statutes and rules. All of these rules, state or federal, serve a very useful purpose insofar as they block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial. We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not resulting in the automatic reversal of the conviction."

Chapman further holds, "We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Where have the majority demonstrated in their opinion that the errors are of such a fundamental constitutional nature?

Finally, in view of the analysis of the evidence and errors set forth above, it appears to me, while a matter of exceedingly fine judgment, the errors were harmless beyond a reasonable doubt.

I respectfully dissent.