JOHN BONNENFANT, APPELLANT, v. STATE OF NEVADA, RESPONDENT.

No. 6039

May 21, 1970                    469 P.2d 401

[Rehearing denied June 12, 1970]

*Seymour H. Patt,* of Reno, for Appellant.

*Harvey Dickerson,* Attorney General, of Carson City, *William J. Raggio,* District Attorney, and *Kathleen M. Wall,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The Washoe County Grand Jury indicted Bonnenfant in two counts, possessing a narcotic drug and supplying a narcotic

drug, both violations of NRS 453.030. A prior indictment by the same grand jury had been dismissed by the court due to the lack of a transcript. The trial jury convicted Bonnenfant of supplying a narcotic drug. This direct appeal challenges the propriety of the district court order resubmitting the matter to the same grand jury whose prior indictment had been dismissed for the reason mentioned. This challenge rests upon the case of State v. Towers, 37 Nev. 94, 139 P. 776 (1914). Subordinately, Bonnenfant urges that prosecutor misconduct denied him a fair trial. The sufficiency of the evidence to support the conviction is not questioned.

1. NRS 172.225 directs the transcription of testimony received by the grand jury and the delivery of a copy thereof to the accused. This statute was enacted in 1967 in the wake of Shelby v. District Court, 82 Nev. 204, 414 P.2d 942 (1966), and Ivey v. State, 82 Nev. 448, 420 P.2d 853 (1966). The primary purpose of the court decisions and the statute which followed is to enable an accused to test probable cause to hold him for trial. Before Shelby, supra, it was not practical to do so since it was necessary to compel the witness who had given evidence before the grand jury to testify in support of the challenge—a rare circumstance, as our case history discloses. Ex parte Colton, 72 Nev. 83, 295 P.2d 383 (1956); Ex parte Stearns, 68 Nev. 155, 227 P.2d 971 (1951); Eureka Bank Cases, 35 Nev. 80, 126 P. 655 (1912). Shelby, Ivey, and the statute which followed benefited the accused and accorded him new protection against the possibility of a false or ill-founded charge. Bonnenfant availed himself of that protection. He moved to dismiss the first grand jury indictment because of the absence of a transcript. The court granted his motion and ordered resubmission of the matter to the same grand jury to allow preparation of a transcript for his use. The record does not carry any other meaning.

Notwithstanding the district court accommodation, Bonnenfant argues that his rights were irreparably prejudiced when the court directed resubmission to the same grand jury rather than to a different body since its members had already determined that he should stand trial. The predicate for this argument is the old Nevada case of State v. Towers, 37 Nev. 94, 139 P. 776 (1914). There, the court decreed that resubmission to the same grand jury which had refused to indict was improper, since the order of resubmission "could serve no other purpose than to indicate to that jury that the court demanded an indictment." Id. at 102, 103. Moreover, the

court suggested that resubmission would be in order to correct merely formal defects, but improper when the grand jurors were to reconsider evidence about which they had already formed an opinion. Id. at 101.

The doctrine of the Towers case was sound law when announced. However, the recent Shelby and Ivey decisions, supra, and NRS 172.225 deprive Towers of the force it once possessed. Probable cause to hold an accused for trial is now readily tested since the evidence received by the grand jury is preserved for inspection and evaluation. A court need no longer be concerned whether the indictment was returned by a "prejudiced" grand jury since the evidence may be reviewed to determine legal sufficiency. In the case before us Bonnenfant never questioned the legal sufficiency of the evidence to support the second indictment. His first claim of error is without merit.

2. The charge of misconduct is directed to several remarks of the prosecutor made during his closing summation to the jury. Those which were not considered serious enough to provoke objection by defense counsel at the time will not now be considered. Mears v. State, 83 Nev. 3, 422 P.2d 230 (1967); Kuk v. State, 80 Nev. 291, 392 P.2d 630 (1964). Nor shall we deal with the remarks to which objection was made, sustained, and the jury admonished to disregard, since none carried inherent prejudice. Dotson v. State, 80 Nev. 42, 389 P.2d 77 (1964).

The closing words of the prosecutor suggested that the standards of the community will be set by verdicts rendered in narcotics cases. The court previously had ruled that such a suggestion was proper. We do not fault that view. Indeed, the suggestion seems to be included in most closing arguments by the state's representative and simply reminds the jury of the seriousness of the responsibility it has assumed. The prosecutor's very last words were "and that's because its people like you in this community who apply your common sense and reject the Bull." Samuel Bull, Esq., was counsel for Bonnenfant. The remark was impolite. Throughout, trial counsel for each party had been acerbic, sarcastic, and personal in the use of words. Such conduct has no place in the courtroom. It is

not helpful to the ascertainment of truth, nor in keeping with professional standards.

Affirmed.

COLLINS, C. J., ZENOFF, BATJER, and MOWBRAY, JJ., concur.