JOHNNY LEE LAYTON, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 6548

December 8, 1971                          491 P.2d 45

[Rehearing denied February 17, 1972]

*Douglas G. Lohse,* of Reno, for Appellant.

*Robert List,* Attorney General, *Herbert F. Ahlswede,* Chief Deputy Attorney General, and *Robert E. Rose,* District Attorney, Washoe County, for Respondent.

## OPINION

By the Court, ZENOFF, C. J.:

Johnny Lee Layton was convicted of the murder of a taxi driver named Charles Anderson on April 28, 1970 in the vicinity of the Mustang brothel east of Reno.

The evidence was entirely circumstantial. On the day of the murder Layton traveled by bus to Reno from Sacramento and remained in the bus depot area during the afternoon. Previously, the day before the shooting, he had purchased a 20-gauge shotgun in Sacramento. In the early evening of the murder day he left the depot for the Mustang brothel in a taxi driven by Anderson. The taxi was discovered very close to the brothel about 20 minutes from the time Layton left the Reno bus depot in the taxicab; Anderson, dead from a shotgun blast, was on the taxi's front seat.

It was established that Layton was at the brothel before and after the time the body was found. Evidence further showed that afterward he left Mustang for Sparks and from there via a flatbed railroad car traveled to Ogden, Utah. He carried a black flight bag with him throughout the course of these events; later, a sawed-off barrel to a 20-gauge shotgun was found in the restroom of the Ogden pawn shop where Layton had sold the flight bag.

Testifying, Layton admitted substantially all the evidence the state sought to prove except that he contended the taxi took him all the way to the brothel's gate and that then Anderson departed, and further, that he had left his shotgun in Sacramento in his brother-in-law's truck. Based on the taxi's trip log and taxi-meter reading, the evidence indicated that the taxi never reached the brothel and in fact stopped 8/10 of a mile away, that being the point where it was found.

The claims of reversible error are directed largely to alleged prosecutorial misconduct and to consequential accumulation of errors, all of which in the aggregate denied Layton due process and a fair trial.

Appellate analysis is difficult because Layton's trial counsel failed to properly and timely object in some instances. For example, the prosecutor in his summation to the jury made reference to Layton's silence at the time of the arrest. Specific reference was made to Layton's complete lassitude under circumstances that, according to the prosecutor, an innocent person ordinarily would protest his arrest violently.

1. As to the error of inappropriate prosecutor comment during trial this court and many others strongly and consistently scored prosecutorial reference to defendant's silence. In cases that are close on guilt or innocence such remarks have constituted reversible error. Griffin v. State of California, 380 U.S. 609 (1965); Gillison v. United States, 399 F.2d 586 (Ct.App. D.C. 1968); People v. Perez, 373 P.2d 617 (Cal. 1962); People v. Varnum, 450 P.2d 553, 558 (Cal. 1969); cf. Fernandez v. State, 81 Nev. 276, 402 P.2d 38 (1965), and McNeeley v. State, 81 Nev. 663, 409 P.2d 135 (1965). In this case Layton's counsel failed to object, but because the prosecutor's comment is ipso facto prohibited, our task is to declare error and search the record to determine its degree of prejudice.

A mere passing reference to defendant's silence without more does not mandate an automatic reversal. Shepp v. State, 87 Nev. 179, 484 P.2d 563 (1971), but the consequences should be governed by a consideration of the trial as a whole. Reversal was ordered in Garner v. State, 78 Nev. 366, 374 P.2d 525 (1962), but in that case this court stressed the defendant's protection because he appeared without counsel.

We said in Wilson v. State, 86 Nev. 320, 468 P.2d 346 (1970), that when an appellant fails to object specifically to questions asked or testimony elicited during trial, but complains about them in retrospect upon appeal, we do not consider his contention a proper assignment of error. Here, defendant's silence was commented upon in the prosecutor's closing argument without objection and summarily we could remove the issue from our consideration.

But, reviewing the transcribed testimony we would not consider this case close as to guilt or innocence. The harmless error rule defined in Chapman v. California, 386 U.S. 18

(1967), is not offended. It should be emphasized that the instances of prosecutorial misconduct of this kind are unnecessary risks. The cost factor of reversal with consequential additional trial expenses to the local county, together with the disappearance of key witnesses command far more respect from the prosecutors to precedents that clearly proscribe any comment on the defendant's silence. The failure to object in a case not close is overcome by the facts, but that does not hold true where the issue of guilt or innocence is doubtful.

2. The district attorney inquired into the details of Layton's prior felony convictions and commented upon his past prison terms. Questioning of prior felony convictions is allowable under NRS 48.020 and NRS 48.130 for impeachment purposes, but Layton complains on appeal that the prosecutor questioned the details of the felonies. Again, no objection was made and we are without knowledge whether the failure to object in this and other instances was a defense counsel trial tactic or was inadvertence. Wilson v. State, supra. Furthermore, we said in Plunkett v. State, 84 Nev. 145, 147, 437 P.2d 92 (1968), "we hold that our statutes do not preclude inquiry into the number and names of the prior felony convictions. It is a matter addressed to the discretion of the trial judge and he may allow or rule out such inquiry according to his view of the demands of fairness in the case before him."

3. It is also contended that the trial court erred in admitting evidence of a crime for which the appellant was not on trial and in allowing the district attorney to comment upon it. The evidence indicates that when Layton purchased the shotgun in Sacramento he made a false certification on the Federal Firearms Transaction Record. The penalty for the false statement is a $5,000 fine or imprisonment. He cites State v. Skaug, 63 Nev. 59, 161 P.2d 708 (1945). Again, no objection was made to the prosecutor's inquiry. Cross v. State, 85 Nev. 580, 460 P.2d 151 (1969).

Error was also asserted for the trial court's refusal to instruct on reasonable doubt as requested by the defendant, but the trial court amply and properly instructed the jury although not in the precise manner requested by the defendant.

Other matters were assigned as error, but we conclude that generally the doctrine of Walker v. Fogliani, 83 Nev. 154, 425 P.2d 794 (1967), does not fit this case. The aggregate of

alleged errors was not of such substance as to amount accumulatively to a prejudicial trial if we were to adjudicate these to be errors.

Affirmed.

BATJER, MOWBRAY, and GUNDERSON, JJ., concur.

THOMPSON, J., concurring:

1. In this case the defendant was represented by the Public Defender of Washoe County, an able, experienced, competent lawyer. I, therefore, do not wish to "second guess" about his failure to object to the several matters mentioned in the opinion of the court. It is sufficient to note that this trial was not a sham, a farce, or a pretense. Bean v. State, 86 Nev. 80, 465 P.2d 133 (1970). Moreover, the prosecutor was free to discuss all matters of evidence received before the jury and should not be faulted for doing so. That is the way cases are tried.

2. Comment upon the defendant's silence when arrested was harmless within the context of this case. The defendant testified fully at trial. Any possible prejudicial inference to be drawn from the officer's comment upon the defendant's silence when arrested loses significance in the face of the testimony offered by him in court before the jury. Indeed, the jury permissibly could infer that had the defendant chosen not to remain silent, his statements would have substantially conformed to his testimony at trial. Shepp v. State, 87 Nev. 179, 484 P.2d 563 (1971). Respectfully, the majority opinion is too loose since it fails to distinguish comment upon an accused's pretrial silence in a case where he later testified fully, from the case where he did not testify at all. In the former situation, such comment is diminished in significance since the accused has testified fully before those who are to decide his guilt or innocence, while in the latter situation we must evaluate the prosecutor's comment upon silence in a vacuum and guess as to its effect.

I concur, with the reservations just expressed.