BUDDY L. YATES, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 10402

June 14, 1979                                             596 P.2d 239

*Howard Ecker, Chartered,* Las Vegas, for Appellant.

*Richard Bryan,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *Roberta O'Neale,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MANOUKIAN, J.:

A jury found appellant guilty of robbery (NRS 200.380) and

the use of a deadly weapon in the commission of a crime (NRS 193.165), and the trial court sentenced him to consecutive terms of fifteen years in state prison, the sentences to run consecutively to any prior sentences.

Wanda Newman, age 12, reported to the Las Vegas Metropolitan Police Department (LVMPD) that on May 29, 1977, she and her three younger brothers, James, Shaun and Terrill, were at home in Las Vegas when, at approximately 11:00 p.m., two black men entered her family's apartment, subsequently pulled a gun and stated their intention to search the premises for money. Shaun and Terrill were locked inside the bathroom while the intruders ransacked the house. Finding no money, the men took two leather coats and various other items of clothing belonging to Wanda's mother, Gloria McFirrin.

Subsequently, on June 3, 1977, at police headquarters, Wanda looked through a photographic lineup of black males. After viewing a number of pictures, she identified appellant as a suspect, resulting in appellant's being charged.

At trial, appellant refused to take the stand. His defense consisted of testimony from two police officers who investigated the crime and stated that the single fingerprint taken from the scene was definitely not his. Appellant now seeks a reversal, claiming that certain irregularities during the course of his trial tainted his conviction.

Only two of the proffered issues warrant our consideration: (1) whether the court's examination of a child witness prejudiced appellant's case to such an extent that his motion for mistrial should have been granted; and (2) whether the trial court erred by failing to exclude evidence of appellant's prior felony convictions.

1.  *The court's examination of a child witness.*

Wanda positively identified appellant as one of the perpetrators, both from her pretrial identification and from her recollection of his face at the time. Wanda's mother testified that her house had been ransacked and her two leather coats stolen. Wanda's youngest brother, Shaun, aged 9, testified that he saw the gun and that the intruders put him and Terrill in the bathroom. However, Shaun did not participate in any pretrial identification procedures and was unable to identify appellant at trial. The prosecutor asked Shaun:

> Q.  If one of the men who were in your house that day walked by you on the street, would you be able to identify him?

Defense counsel objected to the question as calling for speculation by the witness. The objection was sustained but the court then inquired of the witness whether he recognized appellant. Shaun testified that he could not recognize Yates as one of the perpetrators. Consequently, Yates cannot claim prejudice.

## 2. The prior convictions.

Appellant next contends that his motions in limine to exclude, for purposes of impeaching his testimony, evidence of his 1969 robbery conviction and his 1977 larceny conviction, both felonies, were improperly denied. He alleges the trial court's denial of his motions prompted his decision not to take the stand. He therefore submits the trial court abused its discretion in finding the probative value of the prior convictions for impeachment outweighed their prejudicial effect. NRS 48.035.

Our statutes and case authority permit impeachment by proof of prior felony convictions which are not too remote. NRS 50.095;[1] Edwards v. State, 90 Nev. 255, 524 P.2d 328 (1974); Anglin v. State, 86 Nev. 70, 464 P.2d 504 (1970); Plunkett v. State, 84 Nev. 145, 437 P.2d 92 (1968). Beyond the contemplation of our legislature, appellant urges the use of prior felony convictions for impeachment should further be limited to only those felonies specifically determined relevant to the truthfulness or veracity of the witness. See People v. Beagle, 492 P.2d 1 (Cal. 1972); Gordon v. United States, 383 F.2d 936 (D.C. Cir. 1967); Luck v. United States, 348 F.2d 763 (D.C. Cir. 1965). NRS 50.095 imposes no such requirement, nor have any of the prior decisions of this court.[2] However, our legislation contemplates a balancing process to determine whether the evidentiary usefulness of the proposed impeachment by prior

---

[1] NRS 50.095 provides in part:

1. For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime was punished by death or imprisonment in excess of 1 year under the law under which he was convicted.

2. Evidence of a conviction is inadmissible under this section if a period of more than 10 years has elapsed since:

(a) The date of the release of the witness from confinement or

(b) The expiration of the period of his parole, probation or sentence, whichever is the later date.

[2] We must remember that impeachment by the use of prior felony convictions is quite different from the use of evidence of prior unconvicted bad acts offered to prove subsequent conduct in conformity therewith. Prior felony convictions which are not too remote are deemed relevant to the credibility of any witness. NRS 50.095. Evidence of specific instances of prior unconvicted bad acts of an accused, however, is not relevant unless his character is in issue or the evidence is relevant to some issue other than his character. NRS 48.045.

felony convictions, is substantially outweighed by the danger of unfair prejudice, NRS 48.035(1), or by considerations of undue delay and cumulativeness. NRS 48.035(2). While the nature of the underlying offense by which impeachment is sought may affect the trial court's determination as to the relevance, and hence admissibility of the impeachment, that determination will be reversed only upon a clear showing of abuse. Jones v. State, 93 Nev. 287, 564 P.2d 605 (1977).

Even in those jurisdictions which adhere to the rule appellant espouses, since robbery and larceny involve dishonesty, convictions for such offenses are often held admissible for purposes of impeachment. See United States v. Wilson, 536 F.2d 883 (9th Cir. 1976), cert. denied, 429 U.S. 982; People v. Beagle, *supra;* United States v. Simpson, 445 F.2d 735 (D.C. Cir. 1970). Further, appellant's 1969 conviction was not too remote, NRS 50.095(2); Anderson v. State, 92 Nev. 21, 544 P.2d 1200 (1976), and although similar to the charge for which appellant was on trial, *cf.* People v. Beagle, *supra,* we have not excluded such evidence in our prior cases. See, for example, Anderson v. State, *supra.*

Finally, we turn again to appellant's claim that the trial court's denial of his motion in limine compelled him to remain silent out of fear of impeachment. The record reveals that this potential was a weighty factor considered by the trial court in passing on the admissibility of the evidence. People v. Rist, 545 P.2d 833 (Cal. 1976). Appellant made an offer of proof of an alibi defense. He claims that he was at a concert at the time of the robbery. To this end he submitted two cancelled concert tickets. His alibi witness, however, was unavailable to testify at trial. This would have been his primary defense. He represented to the trial court that his testimony would be limited to his whereabouts at the approximate time of the alleged offense.

While appellant's anticipation of the state's use of his prior felony convictions may have been a strong factor affecting his decision not to testify, *cf.* Gibson v. State, 83 Nev. 42, 422 P.2d 543 (1967), there are a myriad of other cogent reasons why an accused might elect not to take the stand, including his desire to exercise his Fifth Amendment rights, reliance on the presumption of innocence, or the avoidance of proof of other bad acts not resulting in convictions which may be provable through him pursuant to NRS 48.045(1). Thus, there are a number of compelling reasons, in addition to general trial tactics that affect an accused's decision to forego testifying. We are impressed with the rationale of the D.C. Circuit Court in a similar setting:

A rule disallowing such conviction evidence would enable an accused to appear as a person whose character entitled him to complete credence, when the facts of his life are to the contrary. Excluding such evidence would also deny a valuable argument to the witness accused who has no prior record.

United States v. Simpson, *supra,* 445 F.2d at 737. We reiterate that we find no abuse in the trial court's discretion.

The remaining issues, involving alleged prosecutorial misconduct, and claimed insubstantiality of the identification and firearm evidence, are without merit. See Bonnenfant v. State, 86 Nev. 393, 469 P.2d 401 (1970); Azbill v. State, *supra;* Stalley v. State, 91 Nev. 671, 541 P.2d 658 (1975).

The conviction is affirmed.

MOWBRAY, C. J., and THOMPSON and BATJER, JJ., concur.

GUNDERSON, J., dissenting:

The prosecutor asked a minor witness, Shaun, the following question:

Q. If one of the men who were in your house that day walked by you on the street, would you be able to identify him?

The Court sustained an objection to this question, on the ground that it called for speculation. Then, the Court initiated the following line of questioning on its own:

THE COURT: Shaun, will you look at the gentleman who is seated at the table right here by Mr. Ecker, the other lawyer, are you looking at him?

THE WITNESS: Yes.

THE COURT: Do you know whether you have ever seen that man before?

Now, I want you to think and I want you to zero in on him and I just want to know if you remember ever seeing him before?

MR. ECKER: Your Honor, I object for the record, I think the question was asked and answered.

THE COURT: You may make your objection on the record. Does he look familiar to you?

THE WITNESS: Yeah.

THE COURT: Now, then, because you can't remember who was in your house that night, when you look at that man in the courtroom you can't say whether he was there or whether he was not there; is that right?

THE WITNESS: Yeah.

THE COURT: Because you just don't remember him; is that right?
THE WITNESS: Yes.
THE COURT: You are sure of that, Shaun?
THE WITNESS: Yes.
THE COURT: Okay. That is all I wanted to get out is that the man looks familiar to you; is that correct?
THE WITNESS: Yes.
THE COURT: All right, Mr. Freedman.
MR. FREEDMAN: Yes.
Q. Where does he look familiar from?
A. The face.
Q. I mean, do you have any idea where you might have seen that man before?
A. No.

My colleagues say this line of questioning was not prejudicial, because Shaun testified he could not identify Yates. Still, with all respect to my brethren, I suggest that is just the point. Although Shaun admittedly could not identify Yates, the judge interjected himself into the case to emphasize the prejudicial but legally non-probative point that Yates looked "familiar."