**UNITED STATES of America ex rel. Joseph Miles WALKER, Appellant,**

v.

**Jack FOGLIANI, Warden of the Nevada State Penitentiary near Carson City, Nevada, Appellee.**

**No. 19267.**

United States Court of Appeals
Ninth Circuit.

March 5, 1965.

**44**

Leo P. Bergin, John Squire Drendel, Bradley & Drendel, Reno, Nev., for appellant.

Harvey Dickerson, Atty. Gen. of Nevada, Gabe Hoffenberg, Chief Deputy Atty. Gen. of Nevada, William J. Raggio, Dist. Atty., Washoe County, Nev., and Sp. Deputy Atty. Gen., Reno, Nev., for appellee.

Before POPE, HAMLEY and ELY, Circuit Judges.

ELY, Circuit Judge:

This appeal is from the District Court's order denying the appellant's application for a writ of habeas corpus. The application followed appellant's conviction, in a Nevada State District Court, of the crime of first degree murder, the assessment of the penalty of death, affirmance of the conviction by the three-judge Supreme Court of Nevada, with one judge dissenting (Walker v. State of Nevada, 78 Nev. 463, 376 P.2d 137, 1962), and denial of petition for writ of certiorari by the Supreme Court of the United States (Walker v. State of Nevada, 1963, 375 U.S. 882, 84 S.Ct. 153, 11 L.Ed.2d 112).

The homicide occurred on September 19, 1960, or very near that date, and on September 28, 1960, there was filed a criminal complaint in which the appellant was formally charged with the crime of murder. When the complaint was filed, the appellant was not in custody of the Nevada authorities, and they apparently had no information as to where he then was. Several weeks later, appellant was discovered to be a prisoner in the Oklahoma State Penitentiary located in Mc-Alester, Oklahoma. His presence there was on account of a crime unrelated to the Nevada charge of murder. The Nevada authorities advised the Oklahoma prison officials of their desire to interview the appellant concerning the Nevada crime of which he stood accused, and on November 29th or 30th, 1960, the Deputy Warden of the Oklahoma prison informed appellant of the desire for interview. On December 2, 1960, in the Warden's conference room at the Oklahoma penitentiary, appellant met with the Deputy Warden, a Nevada district attorney, a Nevada city chief of police, and a court reporter and confessed the killing of the victim of whose murder he had been formally accused over two months before.

The trial of the appellant in the Nevada State District Court occurred from September 18th to September 28th, 1961. The Nevada Supreme Court affirmed his conviction on November 11, 1962, and the Supreme Court of the United States denied his petition for a writ of certiorari on October 19, 1963. His petition for a writ of habeas corpus was filed in our Court below on January 28, 1964, and the District Court's order of denial of the petition was entered on February 26, 1964. Approximately four months later, the Supreme Court, on June 22, 1964, rendered its significant decision in Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

During appellant's trial in the Nevada state court, he vigorously objected to the admissibility of the confession which he had made on December 2, 1960, urging, unsuccessfully, that it was not given freely and voluntarily. Evidence was presented which dealt with the circumstances under which the confession was made. In the course of this testimony, appellant mentioned the conversation which had occurred with the Oklahoma Deputy Warden on November 29th or 30th, 1960, when only the appellant and the Deputy Warden were present. As a part of what occurred during this conversation, appellant testified that he asked the Deputy Warden whether, before meeting with the Nevada authorities, there was "any possibility that I could see somebody, counsel or lawyer or somebody, to talk the thing over before I talk to these people." Appellant further testified that the Deputy Warden replied that " * * * this was an informal meeting, and he didn't think at that time that any thing of that nature was called for or necessary." When questioned about that conversation during the Nevada trial, the Deputy Warden testified as follows:

"Q. That's right. Could Walker have said anything to you concerning counsel?

"A. Concerning counsel, at that time?

"Q. Yes, sir.

"A. I don't recall it.

"Q. *Would it have been possible?*

"A. *It could have been,* but I still don't recall any time that he requested an attorney or anyone." (Emphasis ours)

Appellant does not contend that he made a request for counsel at the time of the subsequent meeting on December 2, 1960 when the confession was made.

The petition, from the denial of which this appeal is taken, was based upon two grounds: (1) That the appellant was denied the right to counsel and thus, divested of a basic Constitutional right and (2) That there was an accumulation of error during his trial in the state court which, considered in the aggregate, was so repugnant to ideals of fair trial as to taint his conviction with the absence of Federal requirements for trial in accordance with due process of law.

The District Court rejected appellee's motion to dismiss the petition. This motion was grounded upon the alleged failure of appellant to exhaust Nevada state court remedies, one of which at least, that of habeas corpus, was claimed by appellee and not denied by appellant to remain available. The court then proceeded to consider and deny the petition upon the merits, relying, with the apparent consent of both parties, upon the petition itself, the return and answer filed by the respondent Warden of the Nevada penitentiary, the traverse of the return, and the reporter's transcript of the proceedings of the trial in the Nevada State District Court.[1]

We are confronted, at the outset, with Nevada's continued insistence that our District Court, in presuming to deny the petition after its consideration of the merits, proceeded improperly and that it should have dismissed the petition because of appellant's failure to resort,

1. In its opinion, the District Court relates that the matter was "submitted" for determination upon the specified documents. From this, we infer that nei-

first, to a remaining state court avenue which might lead to relief. Again, here, appellant does not deny that the remedy of habeas corpus is yet available to him in the Nevada courts. In his reply brief, his only response to Nevada's contention is "We reply to this argument by stating that the United States District Judge correctly ruled in this regard.[2] Appellee cites Darr v. Burford, 339 U.S. 200, 94 L.Ed. 761, 70 S.Ct. 587 in support of his contention. We contend that Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 is controlling on this point."

 In the application of controlling principles as they could be seen in the light which existed at the time of the proceedings in the court below, we cannot say that the District Court adopted an approach which was either improper or indiscreet. All of the trial court errors which are claimed by appellant, in the aggregate, to have been so grievous as to divest him of the constitutional guarantee of due process, were held by the Nevada Supreme Court to have occurred and yet, at the same time, determined by the majority of that court not to have been so prejudicial to appellant's rights as to require reversal. Walker v. State of Nevada, supra. Furthermore, indicating that the testimony concerning alleged denial of counsel had been carefully reviewed in the direct appeal, it was said in the majority opinion of Nevada's high court that "Evidence was given that appellant did not ask for counsel *when he gave his confession,* and this was not denied by appellant." (Emphasis ours) Following this determination, our District Court, in the third of its "Findings of Fact," concluded, "Walker did not at any time, *on December 2, 1960,* request or suggest the need or desirability of the assistance of counsel. Walker was not at any time prior to his confession offered the assistance of counsel." (Emphasis ours) It is clearly seen that on February 26th, 1964, the date of its denial of appellant's petition, the District Court was fairly justified in its conclusion that the appellant had futilely availed himself of all state court remedies by which he could have reasonably expected, or even hoped, to gain relief.

Now, however, the Supreme Court has, with its opinion in Escobedo v. Illinois, supra, cast new light upon a fundamental guarantee of the Federal Constitution, and, in that light, the previous determinations by the Nevada courts and by our District Court that appellant did not request counsel "when he gave his confession" or "on December 2, 1960" may not necessarily be determinative of whether or not he was improperly deprived of an essential constitutional right. It is made clear by the decision in *Escobedo,* supra, that one who is in the custody of the police is entitled to counsel upon request at any crucial interrogation stage of the investigative

ther party saw advantage to be gained by production of additional evidence. Although it is said in Townsend v. Sain, 1963, 372 U.S. 293, 311, 83 S.Ct. 745, 757, 9 L.Ed.2d 770, 786, that a federal court "must grant an evidentiary hearing to a habeas applicant * * * If (1) the merits of the factual dispute were not resolved in the state hearing; * * * *", and that a "hearing is sometimes required" when "so-called facts and their constitutional significance [are] so blended that they cannot be severed in consideration.", the Supreme Court emphasizes that " * * * the state-court record is competent evidence, and either party may choose to rely solely upon the evidence contained in that record, * * * *". The claim with respect to the denial of due process was grounded upon facts which clearly appear in the written record, including the opinion of the Supreme Court of Nevada, and the evidence concerning appellant's alleged deprivation of his right to counsel was evidently believed by the parties to have been as clearly given by the appellant and by the Deputy Warden during the trial of the case as it could have been given in an evidentiary hearing conducted over three years after the conversation of November 29th or 30th, 1960.

2. In the first of its "Finding of Fact," the District Court concluded "All issues presented by the petition for a writ of habeas corpus have been considered and passed upon by the courts of the State of Nevada, and Petitioner has exhausted his remedies in the state courts."

proceedings. It is decided, further, that such right obtains even in advance of the time when he who seeks the right has not been charged with the crime of which he is possibly suspected. Said Mr. Justice Goldberg for the majority, "We hold only that when the process shifts from investigatory to accusatory—when its focus is on the accused and its purpose is to elicit a confession—our adversary system begins to operate, and, * * * the accused must be permitted to consult with his lawyer." Escobedo v. Illinois, supra, 378 U.S. at 492, 84 S.Ct. at 1766, 12 L.Ed.2d at 987. * * * "The 'guiding hand of counsel' was essential to advise petitioner of his rights in this delicate situation." Id. 378 U.S. at 486, 84 S.Ct. at 1762, 12 L.Ed.2d at 983.

Here, we have a record which discloses a claim by appellant, not unequivocally denied by the Deputy Warden of the Oklahoma penitentiary, that on November 29th or 30th, 1960, two or three days before the giving of his confession on December 2, 1960, at a time when he already stood formally accused of the crime for which he was subsequently awarded the penalty of death, he made a request for the assistance of counsel. To this time, there has been no factual determination as to whether or not such request was made. The testimony of appellant as to the request, presented as an incident of attempted proof that the confession was procured through duress, and also the testimony of the Deputy Warden in which he failed to deny that the request had been made, have an impact of credibility. It strikes forcefully because it was given long in advance of the decision in Escobedo, at a time when it could not have been reasonably thought to have a new and legally grave significance. In our view, it is more probable than not that any court, state or federal, called upon to determine the specific factual issue, would conclude, on the basis of the record, that appellant did, indeed, make a request for counsel on November 29th or 30th, 1960. Furthermore, it is not unreasonable to assume that it would be held that such request, if passed off by the Deputy Warden with the comment that " * * * this was an informal meeting, and he didn't think at that time that any thing of that nature was called for or necessary.", which alleged statement by the Deputy Warden was not denied by him, could fairly be interpreted as a request continuing, in its effect at least, to and through the time when the confession was given two or three days later.

In any event, the courts of Nevada are entitled, in our judgment, to have the first opportunity to consider the problem which has now arisen on account of the decision in Escobedo, which, analyzed in connection with the decision in Gideon v. Wainwright, 1963, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, should, without doubt, operate retroactively in the federal courts to protect a right which is assured by the Federal Constitution.

There is no doubt as to whether or not the District Court had the power to entertain the petition for writ of habeas corpus. It had the power, a power which has been vested in the Federal District Courts since the Act of February 5, 1867 (c. 28, § 1, 14 Stat. 385–386) extended the Federal writ to state prisoners and perhaps before. Townsend v. Sain, 1963, 372 U.S. 293, 311, 83 S.Ct. 745, 756, 9 L.Ed.2d 770, 784. The question is one as to how the power should be appropriately exercised.

In Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, Mr. Justice Brennan, pointing to Ex parte Royall, 1886, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868, Cook v. Hart, 1892, 146 U.S. 183, 13 S.Ct. 40, 36 L.Ed. 934, State of Minnesota v. Brundage, 1901, 180 U.S. 499, 21 S.Ct. 455, 45 L.Ed. 639, and Darr v. Burford, 1950, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761, wrote, "These decisions fashioned a doctrine of abstention, whereby full play would be allowed the States in the administration of their criminal justice without prejudice to federal rights enwoven in the state proceedings." Fay v. Noia, supra, 372 U.S. at 419, 83 S.Ct. at 838, 9 L.Ed.2d at 857.

The problem bears remarkable similarity to that which our court recently

met in Blair v. People of the State of California, 340 F.2d 741 (9th Cir. 1965), decided January 6, 1965. There, a California state prisoner sought a writ of habeas corpus in the Federal District Court. He claimed that he was unconstitutionally denied a request that counsel be appointed to assist him in his appeal to a California appellate court. After his conviction had become final, the United States Supreme Court held that one who had been convicted in the state court was entitled as of right to the representation of counsel on his appeal. Douglas v. People of State of California, 1963, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811. We held that since the California appellate court did not have knowledge of the subsequent decision in *Douglas* at the time of its refusal to appoint counsel on appeal, state court remedies had not been exhausted and that before seeking relief in the Federal District Court, the state prisoner should have been required to seek reexamination of the newly created issue in the California courts. We said, " \* \* \*, under 28 U.S.C. § 2254, Blair may not presently have this issue determined in a federal habeas corpus proceeding." Adhering to the principle, we hold that the rule as to exhaustion of remedies, directing that the processes of state court justice be accorded the wholesome respect to which they are entitled, should be applied in the case at bar.

No present purpose would be served by extended and detailed discussion of the second ground of appellant's petition, that in which it is urged that an accumulation of errors in the state trial proceedings resulted in a trial so substantially unfair as to violate federal requirements of due process.[3] Conceding that the contention presents an issue worthy of serious consideration,[4] our meeting it now would overlook the possibility of its elimination by future developments in orderly and proper procedure.

We remand the cause, directing that the District Court enter its order holding the proceedings in abeyance to afford appellant a reasonable opportunity, not exceeding ninety days, to apply to the Nevada courts for their reexamination of the question of whether or not, in the light of Escobedo v. Illinois, supra, appellant was denied the benefit of counsel and the consequent deprivation of constitutional rights.

If appellant makes no application to a Nevada state court within the prescribed ninety days, his petition for a writ of habeas corpus in the court below shall be dismissed.

If, following timely application by appellant to the Nevada courts, they determine that he has no presently available Nevada remedy, or that he has such a remedy but that, on the merits, he has not been deprived of constitutional rights, appellant may, by affidavit and attached exhibits, or by amended application, bring the facts to the attention of the District Court in this proceeding. The District Court will then conduct such proceedings and enter such order as it may deem appropriate, following which the unsuccessful party may appeal on the present record, as supplemented, in this same docket.

Reversed and remanded with directions.

3. The majority of the Nevada Supreme Court held that the so-called "harmless" errors included (1) the remark by the prosecuting attorney in his opening statement to the effect that appellant was apprehended at the Oklahoma State Penitentiary, (2) the asking by the prosecutor of a question of a witness during the presentation of the prosecution's case in chief of a question concerning homosexuality when the prosecutor, after objection, admitted that he could not connect the subject of homosexuality with the appellant, and (3) the refusal to grant a motion by defense counsel for the production of a written report of investigation made by a police officer who testified for the prosecution.

Justice Thompson, dissenting, took the view that, since the jury fixed death as the punishment, he could not say that the errors were "harmless." Walker v. State of Nevada, supra.

4. See Lisenba v. California, 1941, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166, Irvin v. Dowd, 1961, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, Chavez v. Dickson, 280 F.2d 727 (9th Cir. 1960), Pike v. Dickson, 323 F.2d 856 (9th Cir. 1963).