Francisco S. A. IGNACIO and Antonio
S. A. Ignacio, Appellants,

v.

PEOPLE OF the TERRITORY OF
GUAM, Appellee.

Nos. 22412, 22412A.

United States Court of Appeals
Ninth Circuit.

July 7, 1969.

John J. Carniato (argued), of Arriola, Bohn & Dierking, Reyes & La Morena, Eugene H. Bramhall, Agana, Guam, for appellants.

Paul J. Abbate (argued), Atty. Gen., John P. Raker, Island Atty., Agana, Guam, for appellee.

Before JONES*, HAMLEY and MERRILL, Circuit Judges.

JONES, Circuit Judge:

The Ignacio brothers, Francisco and Antonio, appeal from the conviction in the District Court for the Territory of Guam of first degree murder and a sentence of life imprisonment imposed on each of the appellants. The victim of the homicide was Gary H. Jaasma, a sailor in the United States Navy sta-

* Of the Fifth Circuit, sitting by designation.

tioned on the island of Guam. At the time Jaasma was killed, Antonio Ignacio was a few months short of his seventeenth birthday and his brother Francisco was in his early twenties.

On July 14, 1967, Jaasma was found dead behind a bowling alley in Asan, Guam. The next day, July 15, pursuant to the investigation of an auto theft on July 13, 1967, and to the investigation of gunshots heard coming from appellants' house, a search warrant was obtained to search the Ignacio residence. During the search, bucket seats from the stolen auto and a number of firearms were found and the appellants were taken into custody. An amended information charging them with murder was filed on July 31, 1967; counsel was appointed on August 3, 1967; and they were tried and convicted of first degree murder on September 11 and 12, 1967.

Appellants urge an appeal that numerous errors of law were committed in the district court. The assigned errors will be considered seriatim.

Appellants' most compelling argument of error relates to whether the testimony of two witnesses, Frank Mendiola and Francisco Babauta, violated the appellants' right of confrontation as secured by the Sixth Amendment. Mendiola testified as to declarations of Antonio Ignacio which incriminated his brother Francisco. Babauta, a policeman, testified as to declarations of Francisco Ignacio which incriminated Antonio. No objections, either because of violation of constitutional rights or on hearsay, were made by attorneys for appellants. At no time was severance requested.

■ During the pendency of the present appeal, the United States Supreme Court decided the case of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, and held that the rule of Bruton was to be applied retroactively. Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100. In Bruton the Supreme Court held that the introduction at a joint trial of a defendant's extrajudicial confession, where that de-

fendant did not take the stand, inculpating a co-defendant, violated the co-defendant's right of cross-examination secured by the confrontation clause of the Sixth Amendment, despite specific limiting instructions by the trial judge as to the restricted use the jury might make of such a confession. In so holding, the Supreme Court expressly overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278.

This Court has recently had the opportunity to examine the holding of Bruton and apply its principles. Rios-Ramirez v. United States, 9th Cir. 1968, 403 F.2d 1016, cert. denied 394 U.S. 951, 89 S.Ct. 1292, 22 L.Ed.2d 486; Santoro v. United States, 9th Cir., 1968, 402 F.2d 920. In both Rios-Ramirez and Santoro we found the rule of Bruton inapplicable because the co-defendants whose out-of-court statements were used to incriminate petitioners Rios-Ramirez and Santoro all took the stand and testified regarding the subject of their extrajudicial declarations.

The present appeal differs from Rios-Ramirez and Santoro in that neither of the Ignacio brothers took the stand and hence were not cross-examined with respect to their extrajudicial statements. Except for other considerations, it would appear that Bruton requires reversal. But the Supreme Court this term instructs us that every violation of Bruton does not constitute plain error. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

■■ In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, reh. denied, 386 U.S. 987, 87 S.Ct. 1238, 18 L.Ed.2d 241, the Supreme Court concluded that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." 386 U.S. at 22, 87 S.Ct. at 827. The test of Chapman is that "before a federal constitutional error can be held harmless, the court must be able to declare a belief

that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. Examination of the record before this Court in light of Bruton v. United States, supra, and Harrington v. California, supra, convinces us that apart from the questionable testimony under consideration, the case against the Ignacio brothers "was so overwhelming that we conclude that this violation of Bruton was harmless beyond a reasonable doubt." Harrington v. California, supra, at 254, 89 S.Ct. at 1728.

The Territory of Guam's case against the Ignacios was not limited to circumstantial evidence, nor to the testimony now claimed to be objectionable. Frank Mendiola, a friend of the appellants, who was with them the night of the homicide but not present at the scene of the crime, testified that Francisco Ignacio admitted to him that he shot the sailor. Mendiola also testified that Antonio Ignacio pointed out the spot where the sailor was killed and told him where the sailor had been picked up. There was also expert testimony that three carbine shells found at the scene of the homicide were from the carbine found in the Ignacio house. The same ballistics expert identified a bullet found at the scene as being from a revolver discovered in the Ignacio home. Of course, Mendiola's testimony of Antonio Ignacio's admissions could be properly considered as against Antonio. In a like manner, Francisco's statement, overheard by witness Babauta could be considered as against Francisco. The admitted declarations, as they referred to others than the declarants, were unimportant and insignificant when compared to the force of the whole convicting testimony.[1] Rule 52(a), Federal Rules of Criminal Procedure, recognizes that unimportant defects in a trial are to be ignored when it states: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

---

1. The testimony which Francisco Ignacio now contends violated his right to confrontation secured by the Sixth Amendment is as follows:

"Q. [By Mr. Raker] Now did you have any conversation with Antonio while he was taking off the bucket seats?

"A. [Frank Mendiola] Yes, sir.

"Q. And what was that conversation?

"A. They pick up a man.

"Q. Picked up a man, did they say what kind of a man?

"A. He said he was a Statesider.

"Q. Stateside. And did he say where he was picked up?

"A. Recreation Center.

"Q. And did he say where the man was taken?

"A. They took him over to Asan Bowling Alley.

"Q. And what happend to the man there?

What, did they say happened to the man there?

"A. Yes, sir.

"Q. What?

"A. He pushed, he said he pushed the sailor out of the car.

"Q. Now who pushed him out of the car?

"A. Tony Ignacio.

"Q. Antonio said he pushed the man out of the car?

"A. Yes, sir.

"Q. And then what?

"A. He heard the man shot twice.

"Q. The man was shot twice?

"A. Yes, sir.

"Q. And then what?

"A. Then five minutes later again he heard the man shot once.

"Q. A few minutes later the man was shot once?

"A. Yes, sir." Transcript of record, vol. 2, pp. 43–44.

The testimony which Antonio Ignacio now objects to is as follows:

"Q. [By Mr. Raker] Was anything else said?

"A. [Francisco Babauta] Zamora said 'What about your brother? He might say anything what happened,' and Francisco Ignacio said 'I don't think my brother will say anything.' Zamora said to Ignacio 'Why didn't you tell your sister when she come over to visit you to tell your brother not to say anything,' and Francisco Ignacio said 'I will do that when my sister come over.' Then Zamora said 'What about the bucket seat, they might took our fingerprint' and Ignacio said 'I don't think they will do that.'"

Transcript of record, vol. 2, pp. 144–145.

In any event it is doubtful that the question of the admissibility of the declarations of the Ignacio brothers is properly before this Court. Although the brothers were both represented by experienced and able counsel, no objections on constitutional or other grounds were made to the testimony now under examination, nor can it be said that the admission of the testimony constituted plain error under Rule 52(b), Federal Rules of Criminal Procedure. The Supreme Court has held that a general objection "is insufficient to preserve such a specific claim as violation of a constitutional provision in obtaining the evidence." On Lee v. United States, 343 U.S. 747, 749–750, n. 3, 72 S.Ct. 967, 970, 96 L.Ed. 1270. Here even a general objection was not made, much less a specific objection to a violation of a constitutional right. This Court is reluctant to consider objections raised for the first time on appeal. Failure to object acts as a waiver. Hammond v. United States, 9th Cir. 1969, 408 F.2d 481; Montgomery v. United States, 9th Cir. 1969, 407 F.2d 1312; Darden v. United States, 9th Cir. 1969, 405 F.2d 1054. See also Migliore v. United States, 5th Cir. 1969, 409 F.2d 786 (April 18, 1969); United States v. Dolleris, 6th Cir. 1969, 408 F.2d 918.

The appellants' next most compelling contention is that they were denied a trial by an impartial jury because they were "substantially prejudiced and denied a fair trial due to the nature of the pre-trial publicity attendant to this proceeding." The United States Constitution guarantees to an accused the right, in all criminal prosecutions, to a speedy and public trial by an impartial jury. In order to insure that an accused received a fair trial by such a jury, several procedural safeguards have been established. Thus, a defendant may (1) seek a change in venue, (2) seek a continuance, (3) question the prospective jurors during voir dire examinations as to whether they were influenced by pre-trial publicity, (4) challenge the jurors for cause, (5) exercise his peremptory challenges, (6) challenge the whole jury panel and (7) obtain precautionary instructions from the judge. These safeguards were available to the appellants.

The record discloses that the publicity which the appellants contend biased the jury was concentrated in three news articles appearing within five days after their arrest on July 27, 1967. The last of these articles appeared approximately six weeks before the trial began. The jury was selected and the trial began September 11, 1967; it concluded September 12. On August 3, 1967, the attorney for Francisco Ignacio filed a number of motions, among them a motion for a change of venue. This motion was argued and denied on August 4, the day of arraignment. Included with this motion was an affidavit which contained the material which appellants contend denied them a fair trial. There could be no constitutional infirmity in the ruling denying the motion for change of venue if, in fact, the appellants actually received a trial by an impartial jury. Beck v. Washington, 369 U.S. 541, 82 S.Ct. 955, 8 L.Ed. 98, 111, reh. denied 370 U.S. 965, 82 S.Ct. 1575, 8 L.Ed.2d 834. The question is presented whether, in fact, appellants did receive a trial by an impartial jury.

Appellants' trial began approximately six weeks after their arrest. The record discloses no adverse publicity in the interim between the arraignment and the trial. Apparently the news value of the murder and the subsequent arrests ceased during this time. In questions of this nature, this Court is required to carefully review the record and independently evaluate the voir dire testimony of the impaneled jurors. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751, 756; Beck v. United States, 9th Cir. 1962, 298 F.2d 622, 628, cert. denied 370 U.S. 919, 82 S.Ct. 1558, 8 L.Ed.2d 499. The process of selecting a jury was accomplished in the short period of one hour. The judge conducted the voir dire and questioned the prospective jurors, but he allowed with liberality the attorneys for the appellants

ample opportunity to question the members of the jury panel, and they did so. At no time did any of the attorneys for the appellants question any of the prospective jurors as to the possibility that the pretrial publicity might have biased them or influenced them to form an opinion as to the guilt of the appellants. The subject was not discussed at all. It would seem, therefore, that by the time of the trial the appellants' counsel had no reason to believe that the jurors were biased and had formed any opinions as to appellants' guilt. If such were not the case, they had the opportunity and the encouragement of the judge to examine the jurors on the publicity question. Although failure to question the jurors in voir dire as to preformed opinions is not dispositive of the issue of whether the selected jury was impartial, it is strong evidence of the conclusion that the appellants were tried by an impartial jury. Beck v. Washington, supra 369 U.S. at 558, 82 S.Ct. 955; United States ex rel. Darcy v. Handy, 351 U.S. 454, 463, 76 S.Ct. 965, 100 L.Ed. 1331, 1338; Stroble v. California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872.

During the voir dire examination, only one juror was challenged for cause. This challenge was on an unrelated point. All those jurors finally accepted stated that they could be a fair and impartial juror and do justice in the case and that their minds were completely open. The attorneys for the defendants only exercised six of the twelve peremptory challenges allowed them. The voir dire examination with respect to adverse pretrial publicity was fully and adequately covered.

■ To sustain the argument of the appellants, it would be necessary to conclude that the jurors were both exposed to the alleged adverse publicity and were prejudiced thereby. This we cannot assume. Beck v. Washington, supra; Welch v. United States, 10th Cir. 1966, 371 F.2d 287, cert. denied 385 U.S. 957, 87 S.Ct. 395, 17 L.Ed.2d 303. "The mere general showing of publicity thought to be adverse to a party is not sufficient to require a change of venue

except in the most extraordinary cases. In the usual situation, the movant must at least make a showing that the allegedly prejudicial material reached the veniremen, so that a foundation is laid for the possibility of actual bias." Northern California Pharmaceutical Ass'n v. United States, 9th Cir. 1962, 306 F.2d 379, 383, cert. denied 371 U.S. 862, 88 S. Ct. 119, 9 L.Ed.2d 99. It is not sufficient to simply allege adverse publicity without a showing that the jurors were biased thereby. Beck v. Washington, supra 369 U.S. at 558, 82 S.Ct. 955; United States ex. rel. Darcy v. Handy, supra 351 U.S. at 462–463, 76 S.Ct. 965; United States v. Bell, 6th Cir. 1965, 351 F.2d 868, 877, cert. denied 383 U.S. 947, 86 S.Ct. 1200, 16 L.Ed.2d 210; Blumenfield v. United States, 8th Cir. 1960, 284 F.2d 46, 51, cert. denied 365 U.S. 812, 81 S.Ct. 693, 5 L.Ed.2d 692.

"While this Court stands ready to correct violations of constitutional rights, it also holds that 'it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality.'" United States ex rel. Darcy v. Handy, supra 351 U.S. at 462, 76 S.Ct. at 970, quoted with approval in Beck v. Washington, supra 369 U.S. at 558, 82 S.Ct. 955.

The appellants have failed to support their claim as to the prejudicial effect of pretrial publicity as a demonstrable reality. Their burden has not been met and therefore we must reject their claim.

■ The appellants in their brief request this Court to view this appeal as though it were reviewing the denial of the motion for change of venue. An order on such a motion is wholly discretionary with the trial court and the ruling of the trial court on the appellants' motion should not be set aside unless the error is manifest. Irvin v. Dowd, supra 366 U.S. at 723, 81 S.Ct. 1639; Beck v. United States, supra 369 U.S. at 629, 82 S.Ct. 955. We find no manifest

error, nor any clear and convincing proof of prejudice existing in the mind of any juror finally accepted and impaneled.

The Ignacio brothers next urge that they were denied a fair trial by the admission of evidence which they claim was the product of an illegal search and seizure. On July 15, 1967, two days after the murder of Jaasma, a judge of the Island Court of Guam issued a search warrant directing any Guam peace officer to make a search of the residence of Francisco Ignacio for firearms and 1967 red Thunderbird bucket seats. Among the items discovered during the search were the carbine and .38 caliber revolver subsequently admitted into evidence. A motion to suppress the evidence was timely made and denied by the judge of the district court. The warrant was issued on the strength of an affidavit sworn to by Maria Downey, a neighbor of the appellants who stated that she had seen the Ignacio brothers carrying some new red car seats into their home and on three recent occasions she had heard gunshots coming from the Ignacio residence. It was suspected by the police sergeant who sought the search warrant that the red car seats were from a car stolen the morning of July 13, 1967. Appellants urge illegality of the warrant on the unreliability of Mrs. Downey and lack of probable cause.

 Mrs. Downey was not an unknown informant as in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. The facts stated in her affidavit were known personally to her. She witnessed the brothers carrying stolen property into their residence. She heard gunshots coming from the house. Reliance could properly be placed on the affidavit in issuance of the search warrant.

 Appellants attack the form of the application by contending it does not contain facts which show why firearms were being used illegally in the house. Francisco Ignacio was a convicted felon. It would have been a crime for him to possess firearms. The district judge in denying the motion for suppression re-

cited that the Island judge who issued the search warrant took judicial notice of these facts from the court records and the Government Code of Guam. The Supreme Court has said:

"If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one involved here, must be tested and interpreted by magistrates and courts in a common sense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684.

These principles have not been modified by Spinelli v. United States, supra.

 Although we conclude that the search warrant was valid both as to the bucket seats and the firearms, nevertheless if it should be assumed that the portion of the warrant pertaining to the firearms was invalid, it is obvious that that portion of the warrant referring to the bucket seats was valid. Thus, the seizure of the firearms was also valid since not only fruits or implements of the crime but weapons and property, the possession of which is itself a crime, may be seized incident to a valid search. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399.

 The remaining contentions of the appellants are more easily disposed of. They urge that error was committed by admission of evidence of prior criminal acts. Evidence was admitted throughout the trial, over objection, that on the night of the murder, the appellants participated in the theft of a 1967 Thunderbird automobile with red bucket

seats. It was the Government's argument that it was in this car that Jaasma was picked up by the appellants and from which he was pushed and shot. The theft of the car was a crime which was an inseparable part of the whole deed. See 1 Wigmore on Evidence, Section 218, p. 719 (3rd ed.). Evidence of other offenses, wholly independent of the one charged, is generally inadmissible. However, where the evidence is relevant and competent to prove and establish a material fact for which the appellants are charged and the other offense is inextricably a part of the guilty act itself, the court does not commit error in allowing testimony of the other offense. Hess v. United States, 8th Cir. 1958, 254 F.2d 585; Schwartz v. United States, 9th Cir. 1947, 160 F.2d 718. This exception to the general rule excluding evidence of other crimes has also been stated as follows:

> "If several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others, evidence of any or all of them is admissible against a defendant on trial for any offense which is itself a detail of the whole criminal scheme." 1 Underhill's Criminal Evidence, Section 207, p. 471 (Herrick Ed. 1956).

▋ The appellants' contention that the district court erred in admitting into evidence, over objection, the .38 caliber bullet is also without merit. The bullet was imbedded in the ground where the body of the sailor had been found. Appellants object to the relevancy of this testimony because the bullet was not discovered until two days after the body. There had been no steps taken to guard or cordon off the area. The admission of this evidence was within the discretion of the court. We do not find that the court erred in the exercise of its discretion. The delay in finding the bullet went to the weight of the evidence and not its admissibility. This fact was pointed out to the jury.

▋ Appellants urge that a witness who testified on behalf of the Territory as an expert was unqualified. This witness, Charles Shomber, a United States Army Warrant Officer, testified as a ballistics expert. It was shown that he had over four years experience as a firearms examiner in the Crime Laboratory at Camp Zama, Japan. As part of his functions as a firearms examiner, he was regularly called upon to determine whether a given bullet or cartridge case was fired from a particular firearm, and to testify to that effect in court. No objections to his qualifications were made by appellants until Shomber had testified at length. Appellants recognize in their brief that it is "well established that the qualifications of an expert are within the purview and discretion of the trial judge." Unless the trial court's exercise of discretion is clearly erroneous, its decision as to the qualifications of an expert witness should not be disturbed. Mull v. United States, 9th Cir. 1968, 402 F.2d 571, cert. denied 393 U.S. 1107, 89 S.Ct. 917, 21 L.Ed.2d 804; Fineberg v. United States, 9th Cir. 1968, 393 F.2d 417; Formhals v. United States, 9th Cir. 1960, 278 F.2d 43. See also, Standard Oil Company of California v. Moore, 9th Cir. 1957, 251 F.2d 188, 221, cert. denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148. No abuse of discretion existed here, nor has any showing been made that Shomber was not fully qualified as an expert.

▋ Finally, appellants insist that on five specified occasions counsel for the Territory of Guam overreached permissible limits of argument in his summation, though in only one instance was objection raised. Most of the remarks which, singly and in combination, are now said to require reversal relate to comments on and characterizations of what the evidence had shown, or to statements rebutting points raised by the defense in its closing argument. Comments to the jury may cause reversal, under the plain error rule, though not

objected to, but the general principle remains that counsel cannot remain silent, interpose no objections, and after verdict raise for the first time the point that comments were improper and prejudicial. Hammond v. United States, 9th Cir. 1969, 408 F.2d 481; White v. United States, 9th Cir. 1963, 315 F.2d 113, cert. denied 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed. 2d 55. Yet, even if objection had been made, the comments would not have required reversal.

The closing comment of the prosecution to which appellants objected pertained to the failure of the attorneys for appellants to call their own ballistics expert. This was in no way directed to the failure of the appellants to testify on their own behalf. The appellants were not referred to, either directly or indirectly. There clearly was no prejudicial misconduct. This conclusion is strengthened by the fact that the judge instructed the jury that it was governed only by the evidence presented to it.

The evidence of guilt is overwhelming. We find no reversible error. The judgment of the District Court of the Territory of Guam is

Affirmed.