**Joe J. B. O'NEIL, Plaintiff-Appellee,**

v.

**Louis S. NELSON, Warden, Defendant-Appellant.**

**No. 23149.**

United States Court of Appeals, Ninth Circuit.

Jan. 26, 1970.

Rehearing Denied April 23, 1970.

Derald E. Granberg, Albert W. Harris, Deputy Attys. Gen., Thomas C. Lynch, Atty. Gen., State of Cal., for appellant.

Joe J. B. O'Neil, in pro. per.

Before BROWNING and DUNIWAY, Circuit Judges, and SOLOMON*, District Judge.

DUNIWAY, Circuit Judge:

O'Neil is a California prisoner, convicted on two counts under the California Penal Code, kidnapping for purposes of robbery (§ 209) and robbery in the first degree (§ 211), and vehicle theft (Cal.Veh.Code § 10851). On April 25, 1968, O'Neil filed an application for a writ of habeas corpus in the United States District Court, which granted the writ. The warden appeals (28 U.S.C. § 2253).

### 1. *The facts.*

The District Judge made his ruling on the basis of the record of the California trial. This is what that record shows. O'Neil was tried with his alleged partner in the crimes, Roosevelt Runnels. The prosecution presented three witnesses, the victim and two policemen. The victim testified that while he was waiting for his wife in a grocery store parking lot the defendants entered his car at gunpoint. They took about eight dollars from his wallet, forced him to drive several blocks from the market and get out of his car, and then drove away.

One of the policemen testified that later the same evening he had responded to a call from a liquor store operator who was suspicious of a white Cadillac circling the block outside his store. When the squad car followed the Cadillac, one of its occupants threw a gun out of the window. The police stopped the car and arrested its occupants. The car belonged to the victim; its occupants were the defendants.

The other policeman testified (over objection) to a statement made to him by O'Neil's co-defendant Runnels two days after the arrest. Runnels' purported statement coincides almost exactly with the victim's story so far as they overlap, but gives considerable credit to O'Neil for masterminding and directing the day's work. Runnels is alleged to have said that O'Neil came to his place in the afternoon before the robbery and asked him if he wanted "to make a couple of hits," and that after the occurrence in question they decided to drive over to rob the liquor store, and were circling outside waiting for the customers to leave when they were arrested.

Both defendants relied almost entirely on an alibi. Each took the stand and testified that they had been at O'Neil's house at the time of the robbery, and that they had been given the car to drive by an acquaintance without warning that it did not belong to him. Several defense witnesses corroborated parts of the story. Runnels flatly denied having made the statement to the policeman, both on direct and cross examination.

O'Neil's counsel did not cross-examine Runnels. He was trying to establish the same alibi to which Runnels was testifying and obviously did not want to ask about the veracity of an out-of-court statement that both he and Runnels wished to convince the jury had never been made. The efforts of the prosecutor to trip up Runnels were to no avail; he flatly and consistently denied having made the statement. Presumably, if O'Neil's counsel had cross-examined on the subject, the result would have been the same.

Before the officer testified about the statement of Runnels, the court instructed the jury as follows:

"Before you relate the conversation, I will instruct the jury that this statement is to be received and considered by the jury only as to the Defendant Runnels, the one who was making the statement, and is not to be considered by the jury in any manner as against his co-defendant, Defendant O'Neil."

### 2. *Violation of the Bruton rule.*

At the close of the prosecutor's case, there was presented the exact situ-

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

ation that was condemned by the Supreme Court in Bruton v. United States, 1968, 391 U.S. 123, 88 S.Ct. 1620, 20 L. Ed.2d 476, made fully retroactive in Roberts v. Russell, 1968, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100. The warden argues, however, that the *Bruton* error was cured because Runnels took the stand and so was available for cross-examination by counsel for O'Neil. Thus there was an opportunity to confront and cross-examine Runnels, lack of which is the basis for the *Bruton* decision. See Parker v. United States, 9 Cir., 1968, 404 F.2d 1193.

We think that in this case the error was not cured. The Court in *Bruton* relied heavily on its earlier opinion in Douglas v. Alabama, 1965, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934. It is significant to note the use made of that case in *Bruton*. In *Douglas*, the statement of a convicted comrade in the crime (Loyd) was introduced to "refresh the memory" of Loyd when the state called him to the stand. It was presented in questions, piece by piece, over strong objection and despite Loyd's absolute refusal to testify. In *Bruton* this near-misconduct (or dereliction of judicial duty) aspect of the case was not relied upon and the Court said:

"We noted [in *Douglas*] that 'effective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer * * *.' "

It is true that in O'Neil's case Runnels did take the stand and was thus available for cross-examination. But he did not "affirm the statement as his"; he flatly denied making it. Under these circumstances, while the statement was admissible against Runnels, both as an admission or confession and for impeachment, it never became admissible against O'Neil. Yet it remained in the record, and *Bruton* tells us that the court's instruction to the jury is, as a matter of law, ineffective.

The damage done by the out-of-court statement was just what it would have been had Runnels refused to take the stand at all.

The only circuit that has squarely faced the question presented by this case is the Sixth. In Townsend v. Henderson, 6 Cir., 1968, 405 F.2d 324, a co-defendant's confession was admitted in a trial for jailbreaking. In reversing denial of habeas corpus, the court said:

"The only possible distinction between the present case and *Bruton* is that in *Bruton* the co-defendant did not take the witness stand, whereas here Terry did testify in his own behalf. But, this distinction is unimportant since, although Terry was called as a witness, he denied making the confession. Townsend therefore had no effective right of cross-examination in regard to the confession. A similar question was presented in Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed. 2d 934 (1965), and it was there held 'effective confrontation of Loyd was possible only if Loyd affirmed the statement as his.' " (405 F.2d at 329)

See also West v. Henderson, 6 Cir., 1969, 409 F.2d 95.

A number of circuits, including this one, have considered the application of *Bruton* in cases in which a co-defendant has taken the stand after the introduction of his out-of-court statement. But the cases that have rejected challenges under the *Bruton* rule have been careful to emphasize that effective cross-examination was possible, and usually, that it actually occurred.

In Santoro v. United States, 9 Cir., 1968, 402 F.2d 920, the three co-defendants whose out-of-court statements were introduced took the stand and were examined and cross-examined at length:

"Thus, appellant's three codefendants took the stand and each testified regarding the subject of his or her out-of-court statements which implicated appellant. On this ground we distin-

guish *Bruton* * * *." (402 F.2d 922.)

In Rios-Ramirez v. United States, 9 Cir., 1969, 403 F.2d 1016, cert. denied, 394 U.S. 951, 89 S.Ct. 1292, 22 L.Ed.2d 486, we said:

"As in *Santoro*, and contrary to the case in *Bruton*, defendant Manzano in the present case took the stand and testified regarding the subject of her out-of-court statements. Much of her direct testimony concerned appellant Rios-Ramirez."

. . . .

"Thus, appellant not only had an opportunity to confront and cross-examine the person whose statements inculpated him, but he in fact took advantage of this opportunity * * *." (403 F.2d at 1017)

In Ignacio v. People of the Territory of Guam, 9 Cir., 1969, 413 F.2d 513, we summarized our holdings in *Santoro* and *Rios-Ramirez*:

"In both *Rios-Ramirez* and *Santoro* we found the rule of *Bruton* inapplicable because the co-defendants whose out-of-court statements were used to incriminate petitioners Rios-Ramirez and Santoro all took the stand and testified regarding the subject of their extrajudicial declarations." (413 F.2d at 515)

*Ignacio*, however, was decided on harmless error grounds.

Parker v. United States, 9 Cir., 1968, 404 F.2d 1193, is not to the contrary. There we pointed out that "[j]oint trials of persons charged together with committing the same offense or with being accessory to its commission are the rule, rather than the exception. There is a substantial public interest in this procedure. * * * (404 F.2d at 1196) In rejecting the *Bruton* argument we said:

"[S]ome of the facts mentioned in the out-of-court statements * * * were also proved by direct testimony. Others were merely small bits and pieces of a larger picture and can hardly

have had any substantial effect upon the verdict. Finally, Orlando took the stand and was subject to cross-examination." (citing *Santoro* and *Rios-Ramirez*.)

We also rejected Parker's argument that he had no right to cross-examine his co-defendant. Most of the evidence about which Parker was complaining came from the mouths of the co-defendants on the witness stand. That which came from the recital by F.B.I. agents of out-of-court statements was of minor importance. In essence, *Parker* is a harmless error case.

In United States v. Elliott, 9 Cir., 1969, 418 F.2d 219, there was no out-of-court statement. The defendant was objecting to the direct testimony of a partner in crime. Again we emphasized the adequacy of the cross-examination:

"In this case Henne appeared in court, testified, and was subjected to extensive cross-examination by Elliott's counsel; thus, there was full confrontation."

Other circuits, in rejecting challenges under *Bruton*, have been careful to distinguish the situations before them from the situation in this case. See, *e. g.*, United States v. Ballentine, 2 Cir., 1969, 410 F.2d 375; United States v. Jackson, 6 Cir., 1969, 409 F.2d 8; United States v. Lipowitz, 3 Cir., 1969, 407 F.2d 597; Lewis v. Yeager, 3 Cir., 1969, 411 F.2d 414.

### 3. *Harmless error.*

The warden urges that if the *Bruton* rule was violated, the error was harmless beyond a reasonable doubt. Chapman v. California, 1967, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. We think not.

Although the alibi may seem incredible (the jury certainly did not believe it), and the victim positively identified the defendants in court, we cannot say that the admission of Runnels' statement did not harm O'Neil beyond a reasonable doubt. Some doubt was raised about the

victim's identifications, and the alibi witnesses stuck by their stories. The remarkable agreement between Runnels' out-of-court statement and the victim's testimony is very persuasive; the statement offers a plausible explanation of the defendants' motives and actions before, during and after the robbery. It seems to us more likely than not that Runnels' statement dispelled the doubts of the jury. Harrington v. California, 1969, 395 U.S. 250, 89 S.Ct. 1726, 23 L. Ed.2d 284, does not persuade us that the error here was harmless. The state's case here was not overwhelming in the sense that the state's case was overwhelming in *Harrington*.

### 4. *Exhaustion* of *state remedies*.

The warden argues that O'Neil has not exhausted his state remedies. The *Bruton* question was never presented to the state courts for the very good reason that *Bruton* had not been decided when O'Neil filed his federal petition. See Ashley v. California, 9 Cir., 1968, 397 F.2d 270; United States ex rel. Walker v. Fogliani, 9 Cir., 1965, 343 F.2d 43; Blair v. California, 9 Cir., 1965, 340 F. 2d 741. See also United States ex rel. Heirens v. Pate, 7 Cir., 1967, 401 F.2d 147; United States ex rel. DeLucia v. McMann, 2 Cir., 1967, 373 F.2d 759; United States ex rel. Martin v. McMann, 2 Cir., 1965, 348 F.2d 896 (*in banc*). Cf. United States ex rel. Bagley v. La-Vallee, 2 Cir., 1954, 332 F.2d 890.

■ On the other hand, the doctrine of exhaustion of state remedies, as codified in 28 U.S.C. § 2254, is based on comity, not jurisdiction. See Bowen v. Johnston, 1939, 306 U.S. 19, 27, 59 S.Ct. 442, 83 L.Ed. 455; Hunt v. Warden, 4 Cir., 1964, 335 F.2d 936, 940. *Cf.* Wilson v. Anderson, 9 Cir., 1967, 379 F.2d 330, rev'd, Anderson v. Nelson, 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968). As we said in *Walker*, 343 F.2d at 47:

"There is no doubt as to whether or not the District Court had the power to entertain the petition for writ of habeas corpus. It had the power, a

power which has been vested in the Federal District Courts since the Act of February 5, 1867 (c. 28, § 1, 14 Stat. 385–386) extended the Federal writ to state prisoners and perhaps before. Townsend v. Sain, 1963, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770. The question is one as to how the power should be appropriately exercised."

■ When O'Neil filed his federal petition he had exhausted his then state remedies. No evidentiary hearing was held; none was or is required. *Bruton* gave him a "new" ground. It is a state ground as well as a federal one, because the state courts are bound by decisions of the United States Supreme Court construing the Constitution of the United States. The "facts," *i. e.*, the contents of the state record, are not disputed. The only question is one of law and federal law at that. The record shows that O'Neil did present the question, (but obviously could not cite *Bruton* or *Roberts v. Russell*, both *supra*) to the California courts. He relied on a decision of the California courts, People v. Aranda, 1965, 63 Cal.2d 518, 47 Cal. Rptr. 353, 407 P.2d 265, which anticipated *Bruton*. The California Supreme Court has held, however, in People v. Charles, 1967, 66 Cal.2d 330, 57 Cal. Rptr. 745, 425 P.2d 545, that People v. Aranda was not retroactive, that it did not apply to decisions that were then final. This is contrary to the *Roberts* rule of the Supreme Court, as applied to *Bruton*. But the People v. Charles holding did not affect O'Neil, because the affirmance of his conviction occurred only five days before People v. Charles was decided. His conviction was not final; he could and did apply for a rehearing, which was denied. He then sought habeas corpus in the California Supreme Court, which was also denied. Thus substantially the same question that he now presents was presented to and decided by the California court, California having anticipated *Bruton*. We can find here no benefit to California's administration of justice, no ameliora-

tion of state-federal relationships, in requiring that O'Neil again wend his way through California's courts. Federal law requires the decision that the District Judge made. Under the peculiar facts of this case, we agree with the District Judge that O'Neil has done enough so that he can be fairly said to have exhausted his state remedies. We here exercise our discretion to sustain that ruling.

We think that the matter is controlled by Roberts v. LaVallee, 1967, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41, and by our decision in Pope v. Harper, 9 Cir., 1969, 407 F.2d 1303. As we there pointed out, Roberts v. LaVallee has destroyed whatever support the warden might find in *Blair, supra.* In *Ashley* and *Walker, supra,* there was fact finding to be done, and we thought it appropriate that the state courts be given the opportunity to find the facts.

Affirmed.

SOLOMON, District Judge (dissenting):

We may be nearing the day when a co-defendant's confession in a joint trial will be barred, but I do not believe Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), or any other case cited by the majority goes that far.

Here, a police officer testified that after the arrest of Runnels, a co-defendant, Runnels confessed that on the day of the crimes O'Neil asked him if he wanted "to make a couple of hits." According to the officer, Runnels said that the two of them entered the victim's car and at gunpoint took the victim's money. They forced the victim to drive several blocks and get out of his car. They then drove away in the victim's car. In his defense, Runnels took the stand and denied making the confession. He testified that he and O'Neil did not commit the crimes and that they were at O'Neil's house at the time. O'Neil also took the stand, and he too testified that they were at his house at the time of the

crimes. Two other defense witnesses corroborated this testimony.

In *Bruton,* the Government introduced co-defendant Evans' confession, but Evans refused to testify. The Supreme Court set aside Bruton's conviction because Evans' refusal to take the stand "posed a substantial threat to [Bruton's] right to confront the witnesses against him" and denied Bruton a fair trial. 391 U.S. at 137, 88 S.Ct. at 1628.

According to the majority here, the State's introduction of Runnels' confession created a *Bruton* situation which was not cured by Runnels' subsequent testimony because Runnels refused to acknowledge the confession as his.

The majority believes that Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed. 934 (1965), and *Bruton* require a confession to be excluded whenever the co-defendant denies that he made it. In *Douglas,* the defendant was convicted, in a separate trial, of assault with intent to murder. At the trial, the prosecutor asked leading questions to tell the jury about a confession of Loyd, an accomplice. According to the confession, Douglas shot the victim. Loyd refused to testify.

The Supreme Court reversed Douglas' conviction because Douglas could not cross-examine Loyd "to test the truth of the statement itself," 380 U.S. at 420, 85 S.Ct. at 1077, and held that Douglas was unfairly prejudiced by his inability to cross-examine Loyd.

The Supreme Court also stated that "effective confrontation of Loyd was possible only if Loyd affirmed the statement as his." 380 U.S. at 420, 85 S.Ct. at 1077. Relying on this statement, the majority here holds that O'Neil's conviction must be reversed because Runnels did not affirm the confession as his.

I do not believe *Bruton* and *Douglas* require exclusion of the confession here. In each case, the co-defendant refused to testify, and he therefore could not be cross-examined. Here, Runnels testified and his testimony was subject to cross-

examination. O'Neil elected not to cross-examine Runnels because Runnels supported O'Neil's alibi when he testified that O'Neil was with him at O'Neil's house at the time of the crimes.

The majority also cites West v. Henderson, 409 F.2d 95 (6th Cir. 1969), and Townsend v. Henderson, 405 F.2d 324 (6th Cir. 1968), in support of its position.

In *West*, the defendant and two others were tried for first degree murder in Tennessee, where the jury fixes the punishment and has the power to impose a death sentence. The prosecutor introduced the statement of one of the co-defendants, who denied making the statement. According to the Sixth Circuit, this statement, which the prosecutor called a "confession," was "a studied effort on the part of [the co-defendant] to exculpate himself and to inculpate [the defendant]." 409 F.2d at 97. The Court held that introduction of the confession was fundamentally unfair to the defendant and reversed his conviction.

In *Townsend*, Terry was placed in solitary confinement after an attempted prison break and was interrogated about the details of the incident. He confessed that he, Townsend, and two others planned the break and attempted to carry it out. At the joint trial of Terry and Townsend, the prosecutor introduced the confession. Terry denied that he confessed. The Sixth Circuit reversed Terry's conviction because it found that the State had pressured Terry into confessing by placing him in solitary confinement on a diet of bread and water and without medical treatment. The Court also reversed Townsend's conviction because Townsend could not cross-examine Terry on the details of the confession.

In *West*, the defendant's life depended on his being able to show that the co-defendant's story, which placed the primary blame on the defendant, was false and that the co-defendant wanted to shift the blame for the crime to the defendant. In *Townsend*, the defendant might have shown that the co-defendant implicated him because the co-defendant wanted to get out of solitary confinement.

Here, as in *West* and *Townsend*, O'Neil could not question Runnels on the details of the confession. But here, unlike *West* and *Townsend*, O'Neil did not want to question Runnels about the confession. O'Neil knew that the jury would not believe the alibi to which both he and Runnels testified unless Runnels could convince the jury that he did not confess. It was important for O'Neil that Runnels appear to be a witness worthy of belief. O'Neil was anxious to avoid doing anything which might damage Runnels' credibility.

If Runnels had acknowledged the confession, the testimony of the officer would have been admissible against Runnels. O'Neil could have cross-examined Runnels on the confession. Rios-Ramirez v. United States, 403 F.2d 1016 (9th Cir. 1968), cert. denied 394 U.S. 951, 89 S.Ct. 1292, 22 L.Ed.2d 486 (1969); Santoro v. United States, 402 F.2d 920 (9th Cir. 1968).

If the State had not presented Runnels' confession as part of its case, and if Runnels had testified that he and O'Neil were at O'Neil's house at the time of the crimes, the State could have used the confession to impeach Runnels' testimony. *Cf.* Lewis v. Yeager, 411 F. 2d 414 (3d Cir. 1969); United States v. Ballentine, 410 F.2d 375 (2d Cir. 1969).

In either case, O'Neil would be privileged to cross-examine Runnels. The best O'Neil could hope for would be for Runnels to testify that the confession was false and that O'Neil did not commit the crimes. Here, Runnels gave O'Neil all that and more. He denied that he confessed and said that O'Neil was not at the scene of the crimes.

Unless we are willing to hold that use of a co-defendant's confession is impermissible when the co-defendant admits that he confessed and when the State uses the confession for impeachment, I do not see how we can decide that the

**326**

use of the confession under the facts here by a state court was impermissible or that, if it was error, it was error of constitutional proportions. I do not believe *Bruton* requires that we go that far, and I believe that such a decision would be contrary to the recent decisions of this and other Courts of Appeals in *Rios-Ramirez, Santoro, Lewis,* and *Ballentine*.

I would reverse the decision below and hold that the use of Runnels' confession did not deprive O'Neil of a fair trial.